## Thomas Smith *vs.* Robert S. Bryan.

A, by a written contract of sale, sold certain trees standing upon his land to B, who having cut and removed some of them, resold the residue to A by a *parol contract.* HELD:

That both the original and the resale were sales of *goods,* within the seventeenth section of the statute of frauds, but A being owner and in possession of the land on which the trees were growing, the resale, *eo instanti,* by force of *law,* gave possession of them to him, and the delivery was perfect.

Where timber or other produce of land, or any other thing annexed to the freehold, is specifically sold, whether it is to be severed from the soil by the vendor, or taken by the vendee under a special license to enter for that purpose, it is still a sale of goods only.

APPEAL from the Circuit Court for Queen Anne's County.

*Assumpsit* by Smith against Bryan for the value of certain trees standing upon the land of the latter. The declaration contains:—1st, a *special count* upon an alleged parol contract, by which the plaintiff sold to defendant all the pine trees, amounting to 501, standing uncut upon the land of defendant, (which trees had been previously sold by the defendant to the plaintiff,) that would measure five feet and upwards in circumference for three dollars per tree; 2nd, a *general count* for the value of the trees. Plea *non-assumpsit.*

The proof shows that by a written contract, dated the 15th of July 1849, the defendant sold to the plaintiff certain oak and pine timber trees, standing upon the land of the former, for $1200, with privilege to the latter to enter said land and cut and take them away until the 15th of July 1852. Under this contract the plaintiff cut and took away all the oak and some of the pine timber. The proof of the contract sued upon, by which the plaintiff sold the residue of the pine trees to the defendant, is fully stated in the opinion of this court. The defendant then asked three instructions:

1st. If there was no note or memorandum in writing of the contract sued on signed by the defendant, or by some person thereto lawfully authorised by him, and no delivery of the trees, or any of them, and acceptance thereof by Bryan, or no part payment of the price or any earnest given to bind the bargain, then the plaintiff cannot recover.

2nd. If the plaintiff was in possession of the trees prior to the alleged sale to the defendant, there is no evidence to show a delivery thereof, either actual or constructive, by the former to the latter.

3rd. If the plaintiff had heretofore purchased the trees sold to defendant with other trees, and prior to said sale exercised acts of ownership in selecting, cutting and removing some of them, then the possession of them was in the plaintiff at the time of said sale.

The plaintiff then offered three prayers:

1st. If the plaintiff offered to sell and the defendant agreed to buy said trees, and they were at the time standing on the land of defendant, the delivery was complete the instant the offer to sell was accompanied by the agreement to purchase, and the plaintiff is entitled to recover.

2nd. If defendant was in possession of the land on which the trees stood at the time of the sale to him, and accepted the terms of said sale, then, by operation of law, the possession of the trees reverted to him, and no actual or other delivery thereof was required.

3rd. Upon the hypothesis put in the first prayer, the property in the trees, upon the instant of the offer to sell accompanied by the agreement to purchase, passed out of the plaintiff and vested in the defendant.

The court, (HOPPER, J.,) granted all the defendants prayers and rejected all those of the plaintiff; and to each of these rulings the latter excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*R. B. Carmichael* and *Madison Brown* for the appellant.

1st. The *original* contract between the parties shows, that Smith had a mere right of ingress and egress to and from the land of Bryan to cut and remove the timber, and the case of *Parker vs. Staniland*, 11 *East.*, 362, is direct to the point, that such right is only an easement, and not an interest in

land within the fourth section of the statute of frauds. Smith then had no interest in the land and did not intend to sell Bryan any such interest; the sale of an interest in land was not necessary to enable Bryan to enjoy the thing sold, to wit, the standing trees. Nor is this sale a contract within the seventeenth section of the statute of frauds. It is unnecessary to examine the various cases in reference to the sale of vegetable substances before severance from the soil to see if any general principle will reconcile them. Where the vendor is the owner of the inheritance, the difficulty is sometimes solved by looking to the relation the thing sold bears to the inheritance, as its liability or not, to execution, as the property of the vendor. 6 *East.*, 602, *Crosby vs. Wadsworth.* But the goods, &c., intended by this section are such things as were goods, &c., at common law; and although these trees, regarded as the property of Smith, were his chattels, yet regarding them as the property of Bryan, the owner of the inheritance on which they stand, they are not chattels—his creditors could not treat them as such; they would pass to the grantee of the realty as part thereof. If this be so, it is unnecessary to add that a sale of the trees to the owner of the inheritance is good, though not in writing. Before the sale to him they would, to all persons not affected by actual notice of the facts, have been, of necessity, the property of Bryan, as the original contract of sale by him was not recorded, nor is there any law requiring it to be recorded, the subject matter not being real estate or any interest in land, nor of that description of personal property to the transfer of which recording is necessary. See acts of 1729, ch. 8, sec. 5, and 1846, ch. 271. Neither is this sale within the mischief of the statute of frauds, for there are exceptions enumerated within the statute that are within the principle of the mischief, and the case of a contract not provided for is quite as much an exception as if it were enumerated among them.

2nd. But if the contract be within the seventeenth section, then we insist the statute has been gratified. To do this there must be a delivery, with intent to vest the right of possession or property in the vendee, and acceptance by him with intent

to take possession as owner.   This is the general doctrine of
the English cases, adopted by the Court of Appeals in *Clark's*
*Adm'r, vs. Marriott's Adm'r*, 9 *Gill*, 331.   It supposes there
may be a delivery with the view to pass property, and a re-
ceipt of the goods by the vendee as distinct from acceptance.
But where delivery and actual receipt of the goods by the
vendee are concurrent acts this distinction does not apply,
unless it is expressly stipulated that time shall be given to the
vendee to examine, &c.   Actual delivery, however, can only
be made when the actual possession, as well as the right of
property, is in the vendor, or the actual possession is in some
other than the vendee at the time of sale.   This case differs
from the ordinary cases, because the trees, the subject of the
the contract, are standing on the land of the vendee, and the
contract is for the purchase of them in that condition.   The
vendee being in actual possession of the land, was also actually
in possession of the trees rooted to the soil, while the vendor
had only the legal possession or right of property.   What
other or better delivery could be made by the vendor so as to
give the vendee better possession in fact?   When Smith said
to Bryan, I will sell you all my trees of a certain size in your
woods at so much per tree, and Bryan being already in pos-
session of the trees replied, agreed, I will take them at that
price, or it is a bargain, the contract was consumate.   Being
already in actual possession of the trees at the time of the
contract, there could be no mode by which he could signify
his acceptance except his verbal assent to accept them as his
property.   Nor can it be objected here that the quantity and
quality of the trees were not ascertained, and that Bryan had till
such ascertainment the right to repudiate the contract.   This
objection only lies when the delivery and acceptance are in-
complete.   Where both these are perfect there remains no
longer a *locus penitentiæ*.   Even when, by the terms of the
contract, a vendee may receive the property without accept-
ance, with a view to examine it, a very little delay in rejecting
the contract will fix his acceptance.   11 *Mees. & Wels.*, 534,
*Chapman vs. Morton*.   Where weighing was by the terms of
the contract to precede delivery, as in *Wallace vs. Meyer*,

6 East., 614, or where, by the usages of trade, something still remained to be done before delivery and acceptance was complete, as in Wallace vs. Breeds, 13 East., 522, it was properly held in the former case that the vendee was only chargeable with what was weighed and delivered, and in the latter, that he might countermand the order to deliver. But in Whitehouse vs. Frost, 12 East., 614, where the terms of the contract did not require the vendor to do anything further and no usage of trade prevented the property vesting, the contract was held complete, though the article sold was a liquid and mixed with the property of others. In Elmore vs. Stone, 1 Taunton, 458, the acceptance and delivery were held complete, because the vendor had incurred expense or suffered loss, though the horses were never out of his possession in fact. Here, by the original contract, Smith had but a limited period to cut and remove the trees. Every day's forbearance was a loss to him and a gain to Bryan; and if the objection can avail the latter now, he will reap the full benefit of the contract without any consideration.

3rd. The court erred in granting the first prayer of the appellee, because it left the questions of sale and delivery as matters of fact for the jury. 9 Gill, 331, Clarke's Adm'r, vs. Marriott's Adm'r. The second prayer was also erroneous, because it did not distinguish possession in law from possession in fact; and the third prayer is also wrong for the same reason, and because the premises, if true, do not warrant the conclusion as a necessary inference of law.

4th. The contract in this case is rather an agreement between Smith and Bryan, that the former, for the consideration stated in it, should forbear to exercise his right to cut and remove the trees, than a contract for the sale of them, and such a contract, is not within any section of the statute of frauds. 3 Tyrwhitt, 959, Hallen vs. Runder.

Clinton Cook, Philemon B. Hopper, Jr., and John M. Robinson for the appellee, argued, that the alleged sale by Smith to Bryan was a contract within the statute of frauds. That it

comes within the mischief to be remedied is clearly shown from the title and preamble to the statute. Its enforcement would be a fraud upon the appellee. By the original sale, Bryan sold to Smith all the oak and all the pine trees suitable for lumber *for* $1200, and yet after cutting and taking away all the oak and all the choice pine trees, the latter sets up a parol contract by which Bryan is to pay him $1503 for part of the refuse trees. Such a contract bears upon its face the evidence of fraud. It was to prevent the enforcement of such contracts that the statute was made. *Long on Sales,* 74.

But this contract comes within the very letter of the statute. The legislature intended to embrace within some of its sections the subject matter of all contracts. Such is the language of *Littledale, J.,* in *Smith vs. Surman,* 9 *Barn. & Cres.,* 561. The courts have given the most liberal construction to the statute, and have watched with jealous eyes every attempt to take cases out of it. 4 *Cranch,* 235, *Grant vs. Naylor.* The words, "*lands, tenements and hereditaments,*" in the fourth, and the words, "*goods, wares and merchandise,*" in the seventeenth section, were doubtless intended to include every thing then the subject matter of bargain and sale not excepted by the other sections. It is now settled that *stocks* come within its operation and meaning.

But if there be exceptions, we challenge the production of a single case analogous to this in which it has been so ruled. Our only difficulty is to determine within which of the sections it is embraced—whether it be a sale of an interest in land or a sale of goods, &c. Upon this point the decisions are by no means uniform. The general rule, that whatever descends with the inheritance is an interest in land, and whatever passes to the executor as personalty is to be regarded as goods, &c., has been the basis of some of the ablest decisions. In 2 *Brod. & Bing.,* 99, *Teal vs. Auty,* the sale of growing hoop-poles, in *Scorell vs. Boxall,* 1 *Young & Jervis,* 398, that of growing underwood, and in *Rodwell vs. Philips,* 9 *Mees. and Wels.,* 501, that of growing fruit, were held to be sales of interests in land, because they

belonged to the freehold and descended to the heir.    On the other hand, the cases of *Dun vs. Fergusson, Hayes,* 542, *Evans vs. Roberts,* 5 *Barn. & Cres.,* 829, and *Jones vs. Flint,* 10 *Adol. & Ellis,* 753, show that sales of growing turnips, potatoes and corn, and stubble, are not sales of an interest in land, because they were chattels and passed to the executor.

If we apply this rule to this contract, the sale of growing trees must be a sale of an interest in land, and so it is expressly decided in 1 *Denio,* 551, *Green vs. Armstrong.*    5 *Barbour,* 364, 372, *Pierpont vs. Barnard.*    2 *Barbour,* 614, *Warren vs. Leland.*    But these cases say, trees sold with a view to severance are but chattels personal in the hands of the vendee.    They are, in contemplation of law, severed from the freehold and would pass to his executor.    Such being the case, though the first sale by Bryan to Smith be a sale of an interest in land, yet the trees having been sold with reference to a severance, they became chattels in the hands of Smith, and a resale by him would be but a sale of chattels, and in case of his death would have gone to his executor. 1 *Wms. on Exc'rs,* 491.

But there are cases which say, that the sale of *growing trees* is but a sale of chattels.    1 *L'd Raymond,* 182, *Littlewood vs. Smith.*    1 *Greenlf. on Ev.,* sec. 345.    9 *Barn. & Cres.,* 561, *Smith vs. Surman.*    If then this contract be within the seventeenth section of the statute, the only question for consideration is the delivery and acceptance.

Delivery may be either actual or symbolical.    It must be actual when the thing is capable of it, and if not capable of actual delivery there must be some act equivalent to it.    2 *Kent's Com.,* 239, 501.    2 *Stephen's Nisi Prius,* 1990. *Comyn on Contracts,* 114, 115.    Where there is symbolical delivery there must be some token as an indicium of the property, or some act by the vendee from which ownership and possession may be inferred.    17 *Mass.,* 197, *Rice vs. Austin.*    2 *Starkie on Ev.,* 1224, *note.*    Though a constructive delivery may be tantamount to an actual one, yet the circumstances must be so strong and unequivocal as to leave

no doubt as to the intent of the parties. 2 *Starkie on Ev.*, 490, *marg. page, note* 1. Assuming Smith had possession of the trees at the time of the resale, where is any evidence to show a delivery? or of any act by Bryan from which ownership and possession can be inferred?

But it is said, Bryan being owner of the soil had possession of the trees and no delivery was required. This is the point involved in our third prayer. Objection is taken to the use of the word "possession," because it does not distinguish possession in fact from possession in law. This word is often used in the books without making such distinction, and when so used, actual and not legal possession is always understood. It is so understood in common parlance, and could not, therefore, mislead the jury. But we hold further, *eo instanti*, the original written contract was made, Smith had *constructive* possession of the trees, and when he entered exercised acts of ownership over them by cutting and hauling them away, he reduced them into *actual* possession, and could have maintained trover for them even against the owner of the soil. 2 *Barbour*, 624, *Warner vs. Leland*. If these views are correct they fully sustain our third prayer.

But there must also be an acceptance. This question, though discussed by the other side, is not raised by the record; but should this court consider it a subject of inquiry, we say there must be a delivery with intent to vest the right of possession in the vendee, and an actual acceptance by the latter with intent to take possession. There can be no acceptance so long as the buyer can object to quantity, quality or price. 2 *Starkie on Ev.*, 489, 490, *marg. pages, and notes.* 9 *Barn. & Cres.*, 561, *Smith vs. Surman.* Acceptance must be clear and unequivocal, and courts will not allow a constructive possession to be sufficient. 1 *Car. & Pay.*, 272, *Nicholle vs. Plume.* Where is the evidence of acceptance? There were no acts of ownership. The trees were not counted and measured until twelve months after the suit was brought. In *Chapman vs. Morton*, 11 *Mees. & Wels.*, 534, there was an actual delivery. The case

of *Elmore vs. Stone*, 1 *Taunton*, 458, is not considered good law and is overruled. 1 *Kent's Com.*, 503. 3 *Barn. & Ald.*, 321, *Howe vs. Palmer.* 5 *Barn. & Ald.*, 855, *Carter vs. Toussaint.* 3 *Do.*, 680, *Tempest vs. Fitzgerald.*

If in this case the delivery and acceptance be complete, the right of property vested in the vendee. But this could not be; so long as any thing remained to be done to ascertain quantity, quality or price, the property does not vest in the vendee. *Comyn on Contracts*, 178. *Williams on Personal Property*, 36. 6 *East.*, 614, *Wallace vs. Meyer.* 2 *Maule & Selwyn*, 397, *Busk vs. Davis.* 4 *Camp.*, 237. *Withers vs. Lyss.* 13 *East.*, 522, *Wallace vs. Breeds.* 2 *Camp.*, 240, *Zagury vs. Furnell.* 3 *Barn. & Ald.*, 680, *Tempest vs. Fitzgerald.* 13 *Pick.*, 175, *Macomber vs. Parker.*

The case of *Whitehouse vs. Frost*, 12 *East.*, 614, is overruled by *Austen vs. Craven*, 4 *Taunt.*, 644. 5 *Taunt.*, 176, *White vs. Wilks.* It is, however, not analogous to this. Here the trees were sold for $3 per tree measuring five feet; they were not counted or measured until a year after the sale and some time after the date of the writ in this case. Nor did the appellee accept the count, but refused to have any thing to do with it. Suppose, after the alleged sale and before the counting and measuring, a fire had destroyed the trees, how could the appellant have recovered against the appellee? for how many trees would he have declared? neither number, quality or price were ascertained.

If the above views be correct they fully sustain our three prayers. Nor is our position shaken if the resale to Bryan be a sale of an interest in land, it being a sale by parol and void.

But we go a step further and say, independent of the statute, there is no evidence of a sale at common law. A mere offer to sell and an agreement to buy, nothing else being done, do not constitute a sale. 2 *Bl. Com.*, 417. *Williams on Personal Property*, 61. *Smith's Mercantile Law Lib.*, 397.

In conclusion, in answer to the point that there was error in our prayers in making the jury the judges of what is a sale and delivery, we say, that the facts which constitute a delivery in law is a matter for the direction of the court, the finding of the facts belongs to the jury. The court did not make the jury the judges of a delivery, but in our third prayer told them there was no evidence of delivery.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of *assumpsit*, instituted by the appellant to recover from the appellee the value of certain trees standing on the land of the latter. It appears from the evidence in the record, that in the year 1849, the appellee, by a written contract of sale, sold to the appellant certain trees standing on the land of the former, and that in pursuance of this contract the appellant cut down and removed a portion of the trees so purchased. It also appears that in the year 1850, in the presence of the appellee, the appellant said to the witness Larrimore, "I have sold to Mr. Bryan all the balance of the trees standing in the wood, which will girt five feet and upwards, for three dollars per tree, to which the defendant replied, 'yes,' that is the bargain." It is on this oral contract the action is brought, the declaration containing two counts, one specially on the contract, and the other for the value of the trees.

It does not appear the appellee ever cut down any of the trees or exercised any control over their disposition. It does appear, however, from the testimony of the witness Tilghman, that in the year 1851, he, in company with another person, called upon the appellee "and informed him that they were going into his wood, at the instance of the plaintiff, to measure the trees, and asked the defendant to go along with them, which he (defendant) refused, saying he would have nothing to do with it."

On this state of facts the plaintiff and defendant each offered three prayers to the court; those of the defendants were granted, and those on behalf of the plaintiff were

rejected. This disposition by the court below of the several propositions, we think, was erroneous. The prayers of the defendant were all based on the idea that the contract proved was within the statute of frauds, and as it was not evidenced by anything in writing, or the trees delivered to or accepted by the defendant, that there could be no recovery. Those of the plaintiff present the theory, that inasmuch as the defendant was owner and in possession of the land on which the trees were growing, the sale, *eo instanti*, by force of *law*, gave possession of the trees to the defendant. We think the propositions of the plaintiff ought to have been granted, and those of the defendant rejected.

The contract proven was one within the 17th section of the statute of frauds. The authorities establishing this proposition are numerous, both in England and this country. It would be both an useless and tedious work to examine them in detail; the more particularly so as that labor has been most completely performed by *Mr. Greenleaf*, in his work on *Evidence, Vol.* 1, *sec.* 271. The principle to be gathered from a majority of the cases seems to be this, "that where timber or other produce of the land, or any other thing annexed to the freehold, is specifically sold, whether *it is* to be severed from the soil by the vendor, or to be taken by the vendee, under a special license to enter for that purpose, it is still, in the contemplation of the parties, evidently and substantially a sale of goods only."

According to this view, the contract by which originally the defendant in this action sold to the plaintiff the trees, was one for the sale of *goods;* and as this was the character of the thing purchased by the plaintiff, that character was retained up to the time when the plaintiff resold to the defendant.

We do not see how it is possible to effectuate a delivery more perfect than the one in this case. The defendant owned and had possession of the land on which the trees were. It was not physically possible for the plaintiff to give him a more perfect possession, unless he had severed the trees from the soil, which, by the terms of the contract, he was not

bound to do, and which, in all probability, would have defeated the motive of the defendant in making the repurchase, it being most likely that he was induced to engage in the transaction by a desire to have the trees remain standing on his land.

<div align="center">

*Judgment reversed and procedendo awarded.*