JEFFERSON W. PURNER vs. CHARLES PIERCY.

*Practice under Art. 37, sec. 15 of the Code, relating to Commissions to take testimony to be used in Courts of law—Parol Evidence to prove service by the Clerk of a copy of Interrogatories under a rule of Court—Statute of Frauds as affecting a parol Contract for the Sale of a growing peach crop.*

Sec. 143, Art. 16, of the Code, providing that where a commission to take testimony in equity cases, is issued to two commissioners, one of them may act, applies to cases of commissions issued by *Courts of law*, to take testimony out of the State, under sec. 15, Art. 37 of the Code, which prescribes that such commissions shall be executed in the same manner, as in the case of commissions from a Court of Equity.

Where a rule of Court, requires the clerk immediately on the filing of interrogatories under a commission to take testimony, to serve a copy of them on the adverse party, such service may be proved by parol.

Where a prayer is conceded by the adverse party, such concession constitutes the proposition contained in the prayer, as settled law in the trial of the case.

By parol contract, the plaintiff agreed to sell to the defendant, and the defendant agreed to purchase from the plaintiff, the peaches then growing in the peach orchard of the plaintiff, at and for a specified sum, the defendant to gather and remove the peaches as they matured. The defendant or his agent at the time of the purchase, paid the plaintiff a portion of the purchase money, and a further portion before any peaches were gathered, and gathered said peaches from the orchard as they matured, and removed the same. In an action brought for the balance of the purchase money, it was HELD:

1st. That the plaintiff was entitled to recover.

2nd. That the contract was not invalid under the operation of the 4th section of the Statute of Frauds.

A sale of any growing produce of the earth, in actual existence at the time of the contract, whether it be in a state of maturity or not, is not to be considered a sale of an interest in or concerning land.

APPEAL from the Circuit Court for Cecil County.

The appellee sued the appellant.

1st. For money payable for goods sold and delivered by the plaintiff to the defendant.

2nd. For goods bargained and sold by the plaintiff to the defendant.

3rd. For money received by the defendant for the plaintiff's use.

4th. For money found to be due from the defendant to the plaintiff on accounts stated between them.

5th. For that the defendant purchased from the plaintiff the fruit growing and being in his peach orchard, in the county aforesaid, at and for the sum of five hundred and fifty dollars, current money; and the said defendant took possession of and carried the said fruit from the premises of the said plaintiff, at the county aforesaid, but did not pay for the same.

*First Exception.*—A commission to take testimony was issued to two commissioners in St. Louis, Missouri, and was offered in evidence by the plaintiff at the trial of the case.

The defendant objected to the reading of the testimony taken under the commission, on two grounds:.

1st. That the commission was by agreement directed to two commissioners, but was executed in fact by but one of them.

2nd. That neither he nor his counsel had any notice of the filing of the interrogatories by the plaintiff's attorney, and had no opportunity accorded him to file cross-interrogatories.

The defendant admitted the commission was correct in other particulars.

The docket entries contained nothing in regard to the interrogatories.

The plaintiff then called the deputy clerk, a competent witness, and by him proved that he had served a copy of

the interrogatories on the defendant's attorney, the day they were filed, namely, on the 17th April, 1873, and at the time told the counsel that unless his cross-interrogatories were filed within ten days, the commission would be issued. The commission was issued on the 22nd day of May, 1873; that he had no note or memoranda of the fact of service, or the time of service, of the interrogatories, but remembered it distinctly. The XXXth rule of Court is as follows:

" Where leave shall be granted to issue a commission to take depositions out of the State in any cause depending in Court, the party applying for the same shall file his interrogatories with the clerk, who shall not issue said commission until he shall have served a copy of said interrogatories, which shall be done immediately after the receipt of the same, on the adverse party or his counsel; and if said adverse party or his counsel shall not file their interrogatories within ten days from such service, then said commission shall be issued according to the leave granted; and in case the counsel shall not reside at the seat of justice, then a copy of interrogatories, being inclosed in a letter and put into the mail, addressed to such counsel at his usual place of residence, shall be considered as a service within the intention of this rule."

The defendant objected to the admissibility of the parol evidence of the deputy clerk to prove the fact of service, or the time of service, of the interrogatories. But the Court (WICKES and STUMP, J.,) being of opinion that the evidence of the deputy clerk was admissible to prove the facts for which it was offered, and that one commissioner could legally execute the commission, overruled the objection and admitted the evidence taken under the commission to be read to the jury; which was accordingly done. To this ruling the defendant excepted.

*Second Exception.*—The defendant, upon the evidence introduced by the plaintiff, offered the following prayer:

There is no evidence in this case legally sufficient to entitle the plaintiff to recover. The Court refused to grant the prayer, and the defendant excepted.

*Third Exception.*—The plaintiff at the close of the evidence offered the following prayer:

If the jury believe from the evidence that sometime in the summer of 1869, the plaintiff agreed to sell to the defendant, and the defendant agreed to purchase from the plaintiff the peaches then growing on the peach orchard of the plaintiff, at and for the sum of $550.00, the defendant to gather and remove the peaches as they matured, and that at the time the defendant or his agent paid to the plaintiff thirty dollars on account of said purchase, and that a few days after, and before any peaches were gathered, the defendant paid to the plaintiff the further sum of $170.00, in part payment of the price agreed upon; and shall also believe that the defendant, or his agents, gathered said peaches as they matured, and removed the same from the orchard, then the plaintiff is entitled to recover whatever balance the jury may find to be due on said purchase.

And the defendant offered the following prayers:

1st. If the jury believe that the peaches sued for in this case, were sold to Swing and not to Purner, then the verdict must be for the defendant.

2nd. If the jury believe that the peaches were sold to Swing and Purner jointly, then the plaintiff cannot recover on account of a variance.

3rd. If the jury believe that Piercy intended to sell, and thought he was selling the peaches to Purner, but that Purner did not intend to buy them, and did not tell Piercy he was buying them, then the fact that there was a mistake upon Piercy's part, will be no ground to charge Purner, and the verdict, under the pleadings, must be for the defendant.

4th. That Purner is not responsible unless he actually made a contract to buy the peaches, notwithstanding

Piercy thought he was selling the peaches to Purner; and if the jury believe that Purner made no contract with Piercy, he is not responsible under the pleadings in this case, and the verdict must be for the defendant.

5th. That there is no evidence in this case by which the plaintiff can recover on the four counts in this declaration first mentioned.

6th. That there is no evidence in this case legally sufficient to entitle the plaintiff to recover.

The Court granted the plaintiff's prayer, and also the defendant's first prayer, and rejected the defendant's third and fourth prayers as offered; but gave a substitute therefor as follows:

"If the jury believe that the defendant did not agree to purchase from the plaintiff the peaches mentioned in the declaration, then the plaintiff is not entitled to recover."

The fifth prayer of the defendant was conceded by the plaintiff's counsel, and the Court rejected the defendant's second and sixth prayers.

To the ruling of the Court in granting the plaintiff's prayer, and refusing to grant the defendant's third and fourth prayers as offered, and to the Court's substitute for said third and fourth prayers, and refusing to grant the defendant's second and sixth prayers the defendant excepted. And the verdict and judgment being against him, he took the present appeal.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and GRASON, J.

*Albert Constable*, for the appellant.

The question to be decided is, was this a contract within the 4th section of the Statute of Frauds?

Originally the plaintiff had five counts in his declaration, but by the 5th prayer of the defendant, the Court were asked to instruct the jury "that there was no evidence

in the cause by which the plaintiff could recover on the four counts in the declaration first mentioned," and this prayer was *conceded* by the plaintiff's counsel. Upon the effect of this *concession*, see *Sittig vs. Birkenslack*, 35 *Md.*, 273; *Balt. & Ohio R. R. vs. Resley*, 14 *Md.*, 424.

The fifth count was on the special contract.

It is clear that the contract in this case is for an interest in land. The crop was "unripe and unmatured," and by the "terms of the contract of sale, Purner, (the defendant,) was to gather the peaches from the trees *as they became ripe,* and take them away." Here was a clear stipulation that the purchaser was to have the benefit of the plaintiff's orchard, in bringing the fruit to maturity, and *that benefit was stipulated for in the contract itself,* and was a *vitally essential element in it.* Upon page 252, and section 249, *Brown on Statute of Frauds*, it is said: "If, by the contract, the purchaser is not to own the crop till it is severed, and thus become a chattel, it is good without writing; *if he is to own it while it is growing, then he enjoys meanwhile the use of the land,* and a verbal contract to that effect is not good." See also *section* 248; *Carrington vs. Roots,* 2 *Meeson & Welsby*, 248; *Rodwell vs. Phillips,* 9 *Meeson & Welsby*, 501; 2 *Taylor on Evidence, secs.* 951, 952; *Benjamin on Sales, (Ed.* 1873,) 99.

It is to be noticed that a portion of the fruit was ripe at the time of the contract. The "prematures," which were ripe, is the fruit from diseased trees. But this cannot affect the contract here. To enable Piercy to recover, he must set up the *entire* contract, and if any part of the contract be within the Statute, he is debarred from recovery unless he has written evidence of it. *Van Alstyne vs. Wimple,* 5 *Cowen,* 162; *Head vs. Baldrey,* 6 *Adol. & Ellis,* 459; *Mechelen vs. Wallace,* 7 *Adol. & Ellis,* 49.

The defendant's first bill of exception was taken to the reading of a commission issued to Missouri to take testimony.

The main objection urged by the appellant was, that neither he nor his counsel had notice of the filing of the interrogatories, and no opportunity given to file cross-interrogatories. The plaintiff attempted to prove by the deputy clerk the fact of service, and the time of service of the interrogatories. The deputy had no note or memorandum to refresh his memory. There was nothing upon the docket; it was the naked memory of the clerk six months after the fact to prove, not merely the fact of service, but the *precise time*. There should have been an entry on the docket, or an endorsement on the plaintiff's interrogatories. A valuable right of a party should not be jeopardized, and made to depend upon such uncertain evidence. The rule of Court, though it is silent, (as to the proof of the clerk's compliance with it,) never contemplated such a clear evasion of the benefit it sought to give a party. Such evidence is open to all the evils so forcibly pointed out by this Court in *Redman vs. Chance*, 32 *Md.*, 42.

*J. T. McCullough*, for the appellee.

The commission was regularly issued to two commissioners and executed by one in accordance with Article 37, section 15 of the Code, in connection with Article 16, section 143.

As to the notice, see *Hatton vs. McClish*, 6 *Md.*, 407; *Cherry vs. Baker*, 17 *Md.*, 75.

As to the parol evidence of the clerk being legally sufficient to prove that a copy of the interrogatories was served on the defendant's attorney at a proper time. See *Waters vs. Waters*, 35 *Md.*, 531; *Phillips on Evidence*, 377; *Sias vs. Badger*, 6 *N. H.*, 394, 395.

The sale of the peach crop is entirely without the Statute of Frauds according to the law, as finally settled in this State and generally in this country. *Smith vs. Bryan*, 5 *Md.*, 141; 1 *Greenleaf on Evidence, section* 271; 3 *Phillips on Evidence*, 350; *Brown on the Statute of Frauds*, pages 239-259, inclusive.

The general rule furnished by the cases is, "If the contract when executed is to convey to the purchaser a mere chattel, though in the interim it may be a part of the realty, it is not affected by the Statute." *Brown on the Statute of Frauds,* 262 ; *Alexander's British Statutes,* 533, 534 ; *Benjamin on Sales,* 84, *et seq.*

The contract was wholly executed on the part of Piercy, and the promise sued on, related entirely to the money due and not the land. *Wolfe vs. Hauver,* 1 *Gill,* 84 ; *Green vs. Saddington,* 7 *E. & B.,* 503 ; *Lavery vs. Turley,* 6 *Hurl. & N.,* 239 ; *Alexander's British Statutes,* 523, and cases there cited.

The second prayer of the defendant was properly rejected by the Court as calculated to mislead the jury, because all the evidence on the part of the plaintiff as well as the defendant showed it was not a joint sale to Swing and Purner.

STEWART, J., delivered the opinion of the Court.

In the first exception, the defendant, conceding the commission to take testimony to have been correct in other respects, objects to the testimony taken thereunder upon two grounds : 1st. Because, but one of the commissioners acted ; and, 2nd, that neither he nor his counsel had notice of the filing of the interrogatories on the part of the plaintiff. He also objects to the admissibility of the parol evidence of the deputy clerk to prove notice to the defendant's attorney.

The 15th section of the 37th Article of the Code, provides for the issuing of a commission by the Courts of law, to take testimony out of the State, in the same manner and form as by a Court of Equity, for similar purpose.

Art. 16, sec. 143, provides that one of the commissioners may execute the commission. The 144th section authorizes the Courts to prescribe rules for the speedy execution and return of commissions.

The Circuit Court for Cecil County has adopted a rule, inserted in the record, upon the subject, which provides for the filing of interrogatories with the clerk, who is required immediately to serve a copy on the adverse party or his counsel, and if counter-interrogatories are not filed within ten days after such service, the commission shall issue.

In case the counsel does not reside at the seat of justice, a copy of the interrogatories mailed and addressed to him at his usual residence shall be sufficient.

The deputy-clerk proves that he served a copy of the interrogatories on the defendant's attorney the same day they were filed. We are not aware of any reason why his evidence was not admissible, more especially as there is no offer by the defendant or his attorney to prove that notice was not given. We find no error in the 1st or 2nd exception.

The defendant's 3rd exception is, to the granting of the plaintiff's prayer —refusal to grant his 3rd and 4th prayers as offered, and to the Court's substituted instructions therefor, and refusal of his 2nd and 6th prayers.

The defendant's 5th prayer, that there was no evidence in the case authorizing a recovery for the plaintiff on the first four counts in the declaration, was conceded, and as maintained by the defendant, constituted the proposition contained therein as settled law in the trial of the case.

Those counts were not further to be considered, and therefore, according to the conceded law, the plaintiff could not recover upon the count for an account stated, being his 4th count.

There then remained but the 5th count, upon which the plaintiff could recover, which alleged the purchase from the plaintiff by the defendant of the fruit growing in his peach orchard, and that the defendant took possession thereof and carried it away. We think the jury were clearly and correctly instructed by the granting of the plaintiff's prayer. There was no evidence to sustain the

defendant's 2nd prayer. His 3rd and 4th prayers were substantially and concisely granted by the substituted instruction given by the Court.

The 6th prayer, besides being too general under the settled practice of the State, was properly refused, because there was evidence legally sufficient to entitle the plaintiff to recover.

But the defendant's counsel insists that the contract was invalid under the operation of the 4th section of the Statute of Frauds. That section provides that no action shall be brought to charge any person upon any contract or sale of lands, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing, &c.

Agreement and contract seem to be considered in the section of the same purport, and the appellant's counsel insists the contract or agreement relied upon here to charge the defendant, is for lands, or some interest in or concerning them, and therefore not to be established by parol proof.

It would be giving to the Statute a very latitudinarian construction to bring the case in question within the mischief designed to be avoided by the Statute. We have been referred to no case in this State, and have found none to sanction such doctrine. The cases of *Ellicott vs. Peterson's Ex'crs*, 4 *Md.*, 476, and *Smith vs. Bryan*, 5 *Md.*, 141, are against such enlarged construction.

The first case, in regard to agreements to be performed within a year, decides that a complete performance by one of the parties within the year is sufficient compliance with the requirements of the Statute.

The latter case substantially holds that the sale of standing trees, *under the circumstances of that case*, was a sale of goods, and conformed to the demands of the 17th section, and refers with approval to sec. 271 of Greenleaf's Evidence.

There is certainly some conflict in the adjudged cases in regard to the interpretation of contracts for the sale of crops and the natural products growing upon land; and it is difficult to deduce therefrom any clearly defined rule upon the subject.

Mr. Alexander, in his admirable treatise on the British Statutes in force here, has carefully referred to numerous cases, both English and American, and deduced therefrom the distinctions which seemed to have prevailed in regard to the operation of the Statute in relation to growing crops and other produce of land. At page 532, *et seq.,* contracts, as to the natural product of the land, are distinguished from such as relate to crops raised by the industry of man, and yielding an annual profit. A distinction is also noted between the natural produce when severed by the seller or by the buyer. He refers to the recent work of Benjamin on Sales, 84, *et seq.,* for a fuller discussion. Mr. Benjamin, at p. 99, remarks, from all that precedes, the law on the subject of the sale of growing crops, may be summed up in the following proposition, viz: growing crops, if *fructus industriales,* are chattels, and an agreement for the sale of them, whether mature or immature, whether the property in them is transferred before or after severance, is not an agreement for the sale of any interest in land, and is not governed by the 4th section of the Statute of Frauds. Growing crops, if *fructus naturales,* are part of the soil, *before severance,* and an agreement therefore vesting an interest in them in the purchaser before severance, is governed by the 4th section; but if the interest is not to be vested till they are converted into chattels by severance, then the agreement is an executory agreement for the sale of goods, wares and merchandise, governed by the 17th, and not by the 4th section of the Statute.

Assuming these distinctions to be well founded, still what is the natural and what the artificial product re-

mains to be determined in each case. Mr. Phillips, in his work on Evidence, 3 vol., 250, says, the Statute does not include agreements for the sale of the produce of a given quantity of land, and which will afterwards become a chattel ; though some advantage may accrue to the vendee by its continuing for a time in the land.

In Taylor's recent book on the Law of Evidence, 2d vol., sec. 952, the following propositions are submitted : 1st. a contract for the purchase of *fruits* of the *earth*, ripe, though not yet gathered, is not a contract for any interest in lands, though the vendee is to enter and gather them. 2nd. A sale of any growing produce of the earth, reared annually by labor and expense, and in actual existence, at the time of the contract, as for instance a growing crop of corn, hops, potatoes, or turnips, is not within the 4th section, though the purchaser is to harvest or dig them. 3rd. An agreement respecting the sale of a growing crop of fruit, or grass, or of standing underwood, growing poles or timber, is within the 4th section, and a written contract of sale cannot be dispensed with.

However sound his 1st and 2nd propositions, we think his 3rd is to be taken with some qualification—and that a growing crop of peaches or other fruit, requiring periodical expense, industry and attention, in its yield and production, may be well classed as *fructus industriales* and not subject to the 4th section of the Statute.

Brown on Statute of Frauds, in sections 236, 237, 246, 247 and 249, and Greenleaf's Ev. 1 vol., sec. 271, have furnished from the adjudged cases, a construction more in consonance with our views upon the subject, and is substantially to the following effect : There is nothing in the vegetable or fruit which is an interest in, or concerning land, when severed from the soil, whether trees, grass and other spontaneous growth (*prima vestura*) or grain, vegetables, or any kind of crops, (*fructus industriales*) the product of periodical planting and culture ; they are alike

mere chattels, and the severance may be in fact, as when they are cut and removed from the ground; or in law, as when they are growing, the owner in fee of the land, by a valid conveyance, sells them to another person, or where he sells the land, reserving them by express provision.

As a general rule, if the products of the earth are sold specifically, and by the terms of the contract to be separately delivered, as chattels, such a sale is not affected by the 4th section of the Statute, as amounting to a sale of any interest in the land. When such is the character of the transaction, it matters not whether the product be trees, grass and other spontaneous growth, or grain, vegetables, or other crops raised periodically by cultivation—and it is quite as immaterial whether the produce is fully grown or in the process of growing, at the time of making the contract.

The circumstance that the produce purchased may, or probably, or certainly will derive nourishment from the soil between the time of the contract and the time of the delivery, is not conclusive as to the operation of the Statute.

If the contract, when executed is to convey to the purchaser a mere chattel, though it may be in the *interim* a part of the realty, it is not affected by the Statute; but if the contract is, in the *interim*, to confer upon the purchaser an exclusive right to the land for a time, for the purpose of making a profit of the growing surface, it is affected by the Statute, and must be in writing, although the purchaser is at the last to take from the land only a chattel.

To put a reasonable construction upon the terms of the 4th section of the Statute, from the evidence in this case, it is clear the contract in question *is not within its meaning.* It had been executed by the plaintiff, and the fruit had been gathered, and in fact paid for at the time of the suit.

It was in proof that a part of the fruit was prematurely ripe, at the time of the contract.

Purner *vs.* Piercy.

It would be a perversion of the objects of the Statute to hold as invalid, the sale, in other respects legal, of the growing crop of peaches, with no intent of the parties, to sell or purchase the soil, but affording a mere license, express or implied, to the purchaser to go upon the land, to gather the fruit and remove the same. Substantially, to use the language of *sec.* 271, of 1 *Greenleaf's Ev.*, the transaction takes its character of realty or personalty from the principal subject-matter of the contract, and the interest of the parties, and, therefore, a sale of any growing produce of the earth, in actual existence, at the time of the contract, whether it be in a state of maturity or not, is not to be considered a sale of an interest in, or concerning land. Where timber or other produce of the land, or any other thing annexed to the freehold, is specifically sold, whether to be severed from the soil by the vendor, or to be taken by the vendee, under a special license to enter for that purpose, it is still, in contemplation of the parties, a sale of goods only, and not within the Statute.

*Judgment affirmed.*

(Decided 29th May, 1874.)