(Decided April 30th, 1897).

---

## JAMES M. LEONARD *vs.* FRANK MEDFORD.

*Sale of Growing Trees—Statute of Frauds—Acceptance and Receipt of Goods Sold.*

A sale of growing trees to be presently cut and removed by the vendee is not a sale of an interest in land within the fourth section of the Statute of Frauds.

Where after an oral contract for the sale of growing trees to be felled by the buyer, the seller puts the buyer in possession of the land, pointing out the lines within which the trees are to be cut, and the latter does cut down part of the same, there has been a sufficient

acceptance and receipt of part of the goods sold to take the case out of the seventeenth section of the Statute of Frauds, assuming that the contract is within that section.

The delivery of goods sold may be either actual or constructive, and acceptance may be implied from the circumstances of the case. If the vendee does any act to the goods of wrong if he is not the owner, and of right if he is the owner, the doing of that act is evidence that he has accepted them.

Appeal from a decree of the Circuit Court for Talbot County (STUMP, J.), dissolving an injunction previously granted and dismissing the bill of complaint.

The cause was submitted on briefs by

*J. F. Bateman,* for the appellant.

*Wm. R. Martin,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

There are two questions presented by this record. The first one is this : Does the verbal contract set out in the bill of complaint fall within the fourth section or the seventeenth section of the Statute of Frauds ? And the second one is : If the contract be one covered by the seventeenth section was there such a part performance by a delivery and acceptance as to gratify the terms of that section ? The facts out of which these questions arise are, in brief, as follows : Leonard, the appellant, being the owner of the farm, part of which was in timber, verbally agreed on October the fifteenth, eighteen hundred and ninety-six, to sell to William Taylor all the growing oak trees thereon, which measured eighteen inches and upwards across the stump, and which then stood within a designated area containing from one hundred and forty to one hundred and fifty acres of land. The price and the dates when payments of the purchase money were to be made were specified. At the time the verbal agreement was made Taylor's saw-mill was loaded on the cars at some distance away ready to be transported to such point as he might be able to procure timber for cutting ; and upon the

appellant being informed of this fact he told Taylor to let
the mill come on down to his, the appellant's, woods. On
the twentieth of October, Medford, the appellee, who was
an employee of Taylor, reached the appellant's lands with
the portable saw-mill, the boiler and engine and at once
notified Leonard of his arrival, and on the following day
Leonard went to the woods and helped to locate the place
for the boiler and mill to be set.    At the same time Leonard
pointed out the lines of the wood-land and stated that all
the oak timber within those lines was Taylor's.    The engine
and boiler were at once put in place and wells for supplying
the necessary water to operate the engine were immediately
sunk.    Subsidiary stipulations provided that Taylor should
cut down some pine trees for temporary sheds, but these
structures were to remain the property of Leonard.    Leon-
ard selected and pointed out the pine trees to be felled
for these purposes, and they were cut as he directed.    On
the twenty-fourth of October Leonard wrote Taylor a let-
ter, which whilst neither admitting nor denying the verbal
contract that it is conceded in the statement of facts was
really entered into, suggested a different mode for ascer-
taining the amount to be paid and the quantity of timber to
be cut.    This letter led to another interview in which Leon-
ard insisted that the standing red oak trees should be ex-
cluded from the sale, but in which Taylor claimed that the
original bargain should be adhered to.    Taylor then pre-
sented a written agreement embodying the terms of the
verbal understanding and tendered the cash payment and
the notes for the deferred payments ; but Leonard refused
either to sign the written agreement or to accept the money
and the promissory notes.    Medford, in behalf of Taylor,
began at once to cut the oak timber and continued to work
until on the eighteenth of November a bill was filed on the
equity side of the Circuit Court for Talbot County by Leon-
ard against Medford praying that an injunction might be
issued restraining the further cutting of the timber ; and an
injunction as prayed for was issued.    Medford promptly

answered.   An agreed statement of facts was made up and
signed and a motion to dissolve was immediately filed.   On
February the second, eighteen hundred and ninety-seven,
the motion was heard and the injunction was dissolved, the
bill was dismissed and each party was required to pay his
own costs.   From that decree the pending appeal was taken.

If the first of the two questions here involved were an open
one in Maryland, it would be quite interesting to examine
and weigh the numerous and conflicting decisions, both in
England and in this country, which have been pronounced
upon this vexed and difficult subject.   The early English
cases are widely divergent and cannot possibly be reconciled.
To illustrate : TREBY CH. J. in 1 Ld. Raym. 182 reported
that he had ruled at *nisi Prius* that a sale of standing tim-
ber was not within the statute, but was merely a sale of a
chattel interest ; whilst LORD MANSFIELD held in *Emmerson*
v. *Heclis*, 2 Taunt, 38, that a sale of a crop of growing tur-
nips was within the fourth section of the Statute of Frauds.
Perhaps it may be safely said that the more recent English
cases are susceptible of the following classification, repre-
senting distinct but not inharmonious, though often closely
allied principles : *First*, that an agreement to transfer the
property in anything attached to the soil, but which is to be
severed from the soil and converted into goods *before* the
property is transferred to the vendee, is an agreement for
the sale of goods.   *Washburn* v. *Burrows*, 1 Ex. 107.   *Sec-
ondly*, that where there is a sale vesting the property at once
in the purchaser before severance, a distinction is made be-
tween what is *fructus naturales* and *fructus industriales*—the
former, the natural growth of the soil, as grass, timber, &c.,
which at the common law are part of the soil, are an inter-
est in land and a sale of them is within the fourth sec-
tion of the statute ; whilst the latter are chattels, because
by the common law growing crops produced by labor and
expense were, as the representatives and results of that labor
and expense, treated as independent chattels.   *Evans* v.
*Roberts*, 5 B. & C. 829 (12 E. C. L. R. 377).   But there

has been superadded of late by modern English cases a
qualification which seems to be founded in reason and which
may in a great measure by a judicious application, furnish a
more satisfactory and stable rule for determining whether a
sale of that which is the natural growth of the soil is or is
not within the fourth section of the statute.   It having been
held in *Smith* v. *Surman*, 9 B. & C. 561, that an agree-
ment for the sale of growing timber at a designated price
per foot and which the vendor was to cut and had actually
commenced to fell, was within the seventeenth and not the
fourth section of the statute, because, as intimated in *Earl
of Falmouth* v. *Thomas*, 1 C. & M. 105, the seller was to
convert the standing trees into chattels; it was afterwards
determined by COLERIDGE, C. J., BRETT and GROVE, JJ., in
*Marshall* v. *Green*, L. R., 1 C. P. D. 35 (decided in 1875),
that the sale of growing timber to be cut by the *purchaser*
was not within the fourth section, because, as there was no
intention that the purchaser should derive any benefit from
the continuance of the timber in the soil there was no agree-
ment for the sale of an *interest in the land.*   BRETT, J., who
afterwards, as LORD ESHER, became Master of the Rolls,
said: "Where the things are not *fructus industriales* then
the question seems to be whether it can be gathered from
the contract that they are intended to remain in the land
for the advantage of the purchaser, and are to derive bene-
fit from so remaining ; then part of the subject-matter of the
contract is the interest in land, and the case is within the
statute."   And GROVE, J., observed : "Here the trees were
to be cut down as soon as possible, but even assuming that
they were not to be cut for a month, I think that the test
would be whether the parties really looked to their deriving
benefit from the land, or merely intended that the land should
be in the nature of a 'warehouse' for the trees during that
period."   This suggestion that the land was merely a *ware-
house* for the trees was made use of by ROLFE, B., in *Wash-
burn* v. *Burrows, supra.*   In *Greenleaf's Cruise on Real Prop-
erty*, p. 55, sec. 45, *note*, it is stated that, "in contracts for

the sale of things annexed to and growing upon the free-
hold, if the vendee is to have a right to the soil for a time,
for the purpose of further growth and profit of that which
is the subject of sale, it is an interest in the land, within the
meaning of the fourth section of the Statute of Frauds, and
must be proved by writing; but where the thing is sold in
prospect of separation from the soil immediately, or within
reasonable and convenient time, without any stipulation for
the beneficial use of the soil, but with a mere license to
enter and take it away, it is to be regarded as substantially
a sale of goods only, and so not within that section of the
statute; although an incidental benefit may be derived to
the vendee from the circumstance that the thing may remain
for a time upon the land."

In Maryland, Massachusetts, Maine, Kentucky and Con-
necticut, sales of growing trees to be presently cut and re-
moved by the vendee are held not to be within the operation
of the fourth section of the Statute of Frauds. *Smith* v.
*Bryan*, 5 Md. 141; *Purner* v. *Piercy*, 40 Md. 212; *Claflin*
v. *Carpenter*, 4 Met. 580; *Nettleton* v. *Sikes*, 8 Met. 34;
*Bostwick* v. *Leach*, 3 Day, 476; *Erskine* v. *Plummer*, 7 Me.
447; *Culter* v. *Pope*, 13 Me. 377; *Cain* v. *McGuire*, 13 B.
Mon. 340; *Byassee* v. *Reese*, 4 Met. (Ky.) 372.

Whilst in *Smith* v. *Bryan* no other authorities are cited
than 1 *Green. Ev.*, sec. 271, and no discussion of the sub-
ject was attempted, still the bare statement of the principle
by so eminent and distinguished a Jurist as the late CHIEF
JUSTICE LEGRAND is entitled to the highest consideration
and the greatest weight. That decision, delivered in eigh-
teen hundred and fifty-three, established the law in Mary-
land to be that a parol sale of growing timber is not within
the fourth section of the Statute of Frauds; and though
many, perhaps most, of the Courts of last resort in other
States of the Union have taken the opposite view, we have
no disposition to unsettle a doctrine that has been accepted
and not questioned in Maryland for more than forty years.
It seems to us that the conclusion reached in *Smith* v.

*Bryan* is sound.    In transactions of the kind there and here involved, it is obvious that the *intention* of the parties to the contract—the owner of the timber, on the one side, and the purchaser of it, on the other—was not to deal with an interest in the *land* upon which the timber stood, but respectively, to sell and acquire the *product* of the soil and nothing more.    If the manifest intention of both the vendor and vendee as disclosed by the terms of the contract entered into by them, is to be regarded at all—if what they meant to do as evidenced by what they have agreed to do is to be considered, instead of imputing to them a design to do something wholly different—then their intention, when apparent, ought to be given effect, provided it violates no rule of law or fixed legal policy.    "The object of a party who sells timber is, not to give the vendee any interest in his land, but to pass to him an interest in the trees, when they become goods and chattels."    LITTLEDALE, J., in *Smith* v. *Surman, supra.*    It is precisely because "in the contemplation of the parties" the transaction is "evidently and substantially a sale of goods only" that it ought not to be treated as a sale of interest in land.    In 40 Md., whilst this precise point was not at issue, yet it was reasserted as originally announced in *Smith* v. *Bryan.*    As the law now stands in Maryland the parol contract for the sale of Leonard's growing timber was not one within the fourth section of the Statute of Frauds, and it only remains to inquire whether the agreement is void under the seventeenth section.

By the section just named no contract for the sale of any goods, wares and merchandise for the price of ten pounds sterling and upwards is good unless the buyer shall accept part of the goods so sold and actually receive the same, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made and signed by parties to be charged by such contract.    Though, therefore, the contract be verbal it will be still good if the articles sold or some of them are actually received and accepted by the vendee.

Receipt and acceptance presuppose delivery, and a delivery may be either actual or constructive.    Both delivery and acceptance may be inferred as conclusions from the attendant circumstances.    As remarked by ERLE J. in *Parker* v. *Wallis*, 5 E. & B. 21, " If the vendee does any act to the. goods, of wrong if he is not owner of the goods, and of right if he is owner of the goods, the doing of that act is evidence that he has accepted them."    And LORD ELLENBOROUGH observed in *Chaplin* v. *Rogers*, 1 East. 192, in determining whether a stack of hay had been delivered and accepted, that, " Where goods are ponderous and incapable of being handed over from one to another there need not be an actual delivery, but it may be done by that which is tantamount."    To the same effect, the recent case of *Corbett* v. *Wolford et al.*, 84 Md. 426.

The appellant actually put the purchaser in possession of the trees and pointed out the lines of the tract whereon the timber to be cut then stood, and the appellee, as the employee of Taylor, proceeded to fell the trees and had, in fact, cut down some of them, in part performance of the contract, before the injunction was applied for or issued. Here, then, the vendee in felling the trees did an act " of wrong if he " was not the owner of them, " and of right if he " did own them, and " the doing of that act " coupled with the lawfulness of his entry on the land, " is evidence that he had accepted them."    Under the agreed statement of facts it is conceded that the appellant placed Medford, the agent of the purchaser, in full possession of the timber ; and it is now too late for the vendor to repudiate the contract on the ground that it is void under the seventeenth section of the Statute of Frauds.

As we find no error in the decree from which the pending appeal was taken it will be affirmed with costs in this Court.

> *Decree affirmed with costs in this Court; the costs below to be paid as directed by the decree.*

(Decided April 30th, 1897).