## WILLIAM LA PLANT v. WILLIAM A. LOVELAND.[1]

### February 21, 1919.

### No. 21,125.

**Statute of frauds — sale of standing timber.**

1. A contract for the sale of standing timber, to be cut by the purchaser, must comply with the provisions of the statute of frauds relating to the sale of an interest or estate in real property.

[1]Reported in 170 N. W. 920.

**Same — documents in this case comply with statute — authority to close deal.**

2. The writings in evidence in this action comply with the provisions mentioned, provided authority to "close the deal" gave power to make the contract.

**Broker — authority to find purchaser not authority to make contract.**

3. The general rule is that an agent or broker authorized to find a purchaser or negotiate a sale at a named price lacks power to make a contract binding the principal.

**Same — authority to agent not authority to make contract.**

4. The wording of the authority to the agent, considered in the light of the surrounding circumstances, did not grant the power to make the contract of sale for defendant.

Action transferred to the district court for Hennepin county to recover $1,000 for breach of contract in the sale of certain timber. The answer alleged defendant sold the timber to persons other than plaintiff. The case was tried before Steele, J., and a jury which returned a verdict for $375. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed with directions.

*Benton & Morley*, for appellant.

*M. L. Dougherty* and *J. M. Pulliam*, for respondent.

HOLT, J.

Defendant owned 160 acres in section 2, township 51, range 26, Aitkin county, and on December 2, 1915, one Allin, an attorney and real estate dealer of Hill City in said county, wrote that he had been requested by plaintiff and one Jewett to inquire of defendant whether he would sell his marketable timber in "2—51—25," and that they offered $200 for the timber remaining on the land with the option of two years in which to remove it. On the twenty-first of the month defendant answered saying: "I will take $200.00 for the timber this party will remove this winter. If this is satisfactory to the buyers you may close the deal. Would not give two years to remove what little timber there is on this land of mine as it might interfere with the sale of the land." January 18, 1916, Allin wrote plaintiff: "I have just received a letter from Mr

Loveland stating that he would accept $200 for timber on Sec. 2 as offered by you subject, however, to the condition that it be removed this winter. If you want the timber you had better come to Hill City and close the deal at once." Plaintiff went to Allin's office in Hill City on the twentieth, and left his check for $200 with Allin's partner, Allin not being in. Later in the day Allin wrote plaintiff: "I have your check for $200 in payment of timber to be cut this year on Sec. 2—51—26. As it is already along in the season I would advise that you get busy at once. I will get a formal authority from Loveland in contract. I have at present his letter giving me the right to make the deal. Will send you contract as soon as received. Will suggest April 20th to remove timber." Plaintiff testified that he entered the land and began cutting the next day. On January 24 defendant telegraphed Allin: "Do not sell timber. Think I have sold it," and on the same day Allin responded: "Your wire received. Have already sold timber." Defendant sold the timber to one Breen before he received Allin's response. Plaintiff brought this suit for damages based on the value of the standing marketable timber on January 20, 1916. The $200 paid was returned to plaintiff before the trial, and Breen recompensed him for the cutting done. The jury gave plaintiff a verdict of $375, and defendant appeals from the order denying his motion for judgment or a new trial.

This court stands committed to the doctrine, generally prevailing in this country, that the sale of growing grass or standing timber, to be severed by the purchaser, is a sale of an interest in real estate, and therefore the statute of frauds relative to the transfer of an interest or estate in lands is applicable to the transaction. Herrick v. Newell, 49 Minn. 198, 51 N. W. 819; Kirkeby v. Erickson, 90 Minn. 299, 96 N. W. 705, 101 Am. St. 411; Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126. There are well reasoned cases to the contrary, where the sale contemplates an immediate severance. Leonard v. Medford, 85 Md. 666, 37 Atl. 365, 37 L.R.A. 449; Robbins v. Farwell, 193 Pa. St. 37, 44 Atl. 260. Tested then as a sale of an interest in land, we think the writings above set out make a valid contract, provided the agent had the needed power. The authority to the agent is in writing. The receipt for the consideration which acknowledges the sale is also in writing, subscribed by the agent. This would seem to be a compliance with the statute of frauds.

Unruh v. Roemer, 135 Minn. 127, 160 N. W. 251. In addition the full consideration was paid and the purchaser entered and began cutting. No further obligation to the seller rested upon the purchaser, and there was no need of the latter's acceptance or signature to the contract.

But defendant contends that the authority of Allin was merely to negotiate a sale of the timber and did not extend to the making of a contract of sale in behalf of defendant. A real estate agent or broker with whom land is listed for sale, at a named price, has not the implied power to execute a contract of sale binding the principal. Larson v. O'Hara, 98 Minn. 71, 107 N. W. 821, 116 Am. St. 342, 8 Ann. Cas. 849. This is the general rule. It is a salutary rule. Unless the agency is exclusive, the owner may sell or place the property for sale with several agents. In that situation it is not to be contemplated that each of the several agents is invested with the implied power to make a contract for the principal. The giving of possession, the form of conveyance, the responsibility of the purchaser if credit is to be given, and other incidents of a contract of sale of an interest in lands are matters as to which the owner is peculiarly concerned, and it should not be lightly inferred that an agent merely to find a purchaser or to negotiate a sale has implied power to bind and conclude the owner by an enforceable contract. However the rule referred to is not without apparent exceptions, for either the language by which the authority in the premises is conferred upon the agent, or the attending circumstances, or both, may by necessary implication grant power to the agent to make a contract. In Jackson v. Badger, 35 Minn. 52, 26 N. W. 908, it was held that an agent with authority to sell land was empowered to make an executory contract upon the terms prescribed by the principal, citing Haydock v. Stow, 40 N. Y. 363; and the same was held in Peterson v. O'Connor, 106 Minn. 470, 119 N. W. 243, 130 Am. St. 618. Many cases bearing on this subject are cited in the note to Weatherhead v. Ettinger, in 17 L.R.A. (N.S.) 210.

In the instant case the authority to Allin was to "close the deal," if the proposed purchaser accepted the offer as made. Had there been immediate action thereafter, it might be construed as granting power to give a contract; the sale of this remnant of timber partaking of the nature of a sale of some chattel. But it is to be borne in mind that defendant's offer and direction to Allin was dated December 21, 1915.

The logging season during which defendant wanted the timber removed, if at all, was slipping by, and on January 14, 1916, Allin wrote him this discouraging communication: "Your letter dated Dec. 21st in reference to the timber on your land in section 2—51—26 has just been delivered to me. The delay is so great that it may be the parties will not consider purchase. I was not enthusiastic at the time of writing you because there was some question in my mind as to the reliability of the parties. However they may surprise me. Will write as soon as I hear from them." Allin evidently did not then consider he had power to make a contract. He delayed four days more before he wrote to plaintiff. It is not to be wondered at that defendant got busy finding another purchaser. The receipt which Allin gave plaintiff also indicates that Allin did not understand that he had authority to bind defendant, for he proposed obtaining a contract signed by defendant. Plaintiff could claim no contract until he received this receipt, and by it he was informed of the fact that Allin did not profess to have power to bind defendant to a sale. It would follow that by entering the land and beginning cutting with the knowledge conveyed in the receipt, plaintiff obtained no advantage not otherwise held by him. We are of opinion that the authority of a real estate agent or broker to bind his principal by a contract of sale should clearly and unequivocally appear before the latter can be held either to an action for damages or specific performance, and the majority of the court conclude that no such clear authority appears from the writing here involved, especially when construed in the light of the surrounding circumstances.

This view necessarily leads to a judgment for defendant, and the other errors assigned need no consideration.

The order is reversed with direction to enter judgment in defendant's favor notwithstanding the verdict.