## Backenstoss *versus* Stahler's Administrators.

It is a rule of the common law, that growing crops are personal property, but pass by conveyance as appurtenant to the land, unless severed by reservation or exception. And this rule has not been altered by the Statute of Frauds and Perjuries.

A party may show by parol, that the growing crops were reserved on a sale of the land, although there be no exception in the deed.

A parol reservation of the growing crops, is a severance, and will prevent them from passing as realty under an Orphans' Court sale of the premises.

Such reservation need not be in writing; it is not an interest in the land. It is otherwise, however, in respect to its natural products, as trees, &c.; in regard to which a reservation must be in writing.

A deed executed by the widow and heirs for the purpose of carrying into effect an Orphans' Court sale of the land, will have no greater effect to pass the growing crops, than if made by the administrators.

The employment of a puffer to enhance the price at an Orphans' Court sale of real estate, although a ground to set aside the sale, will not affect the rights of the parties, after confirmation, receipt of the deed, and possession under it.

The reservation of the growing crops, gives a right to enter, cut, and carry them away; and if wrongfully taken by the vendee, trover will lie for them.

The ordinary rule of damages in trover, is the value of the goods taken, with interest; but the jury may go beyond it.

A defendant in trover, who has repudiated the possession of the goods under a contract, and claimed by a wrongful conversion, is not entitled to the benefit of the contract in mitigation of the damages.

The non-joinder of proper parties as plaintiffs, must be taken advantage of by plea in abatement.

ERROR to the Common Pleas of *Lehigh county*.

This was an action of trover by John Stahler and Henry Dillinger, administrators of Daniel Stahler, deceased, against John Backenstoss, for a quantity of wheat, rye, and straw.

On the 1st December 1854, the plaintiffs, as administrators of Daniel Stahler, deceased, sold the real estate of their intestate, under proceedings in partition in the Orphans' Court, and the defendant became the purchaser, at the price of $10,566.87. One of the conditions of sale was as follows:—

"All straw from the winter grain now in the ground, shall remain on the premises (except two ton), and the vendors also reserve the right to take firewood for the two families now living on the premises, until said 2d day of April, and five cords besides, to be taken away on or before the time of possession given. The above-mentioned straw shall be long straw, thrashed with flails."

At the time of the sale, the plaintiffs gave a verbal notice that the whole of the crop of grain in the ground, was reserved, except every fourth bushel, which the purchaser was to take for harvesting and thrashing, in case he should choose to cut the grain.

[Backenstoss *v.* Stahler's Administrators.]

At the time of completing the purchase, Backenstoss, desiring to obtain a better title than, in the opinion of his counsel, he would have received under the Orphans' Court sale, requested that the widow and heirs of Daniel Stahler should join in a deed for the property, on the same terms and conditions as he had purchased from the administrators. No objection was made, and a deed was accordingly executed, in which was contained no reservation of the growing crop. This deed was dated the 7th April 1855.

Backenstoss entered into possession and harvested the growing crop; for the value of which the plaintiffs brought this action.

On the trial of the cause, the plaintiffs offered to prove "that after the written conditions of sale were read, the crier publicly announced that the grain sown by John Stahler and Henry Dillinger, on the land of Daniel Stahler, after his death, was not sold, but was reserved; that the reservation was fully understood by John Backenstoss, the purchaser, and was inadvertently omitted to be reduced to writing; to be followed up by proof of declarations of the defendant that he bought, in the full knowledge of this reservation, and that he had not bought the grain."

The defendants objected to the admission of this evidence, but the court overruled the objection, admitted the evidence, and sealed a bill of exceptions.

The defendants offered to prove that one of the plaintiffs employed a puffer to bid at the sale, and that he did bid for the property; to be followed by the deed of 7th April 1855. The court ruled out this evidence, and the defendants excepted.

The defendant's counsel presented the following points in writing, upon which they requested the court to charge the jury:—

1. The alleged reservation having been made, if at all, at a judicial sale, is inoperative, and has no effect, especially if not reported to and sanctioned by the Orphans' Court.

To this point the court answered—"This point is answered in the negative. If the defendant agreed that the reservation of the grain should be made, he is bound by it, although it was made at a judicial sale."

2. If a new contract was made at the execution of the deed of April 7th 1855, the former alleged reservation is thereby annulled, and confers no right to recover.

Answer.—"The second point is answered in the affirmative. The evidence on this point is in the testimony of Mr. King and Esquire Lawall. The difficulty, they say, was about the dower. That the same price was to be paid for the land. They say nothing as to anything being said about the reservation."

3. Unless the alleged reservation was omitted by fraud or mistake, from the written conditions of sale, the report of sale, and

[Backenstoss *v.* Stahler's Administrators.]

the deed of 7th April 1855, it confers no right of recovery on the plaintiffs.

Answer.—"I answer this point in the negative. It is not necessary that the defendant should have had a fraudulent intent at the time of signing the conditions. If with full knowledge of and assent to the reservation, he afterwards took advantage of the omission, by holding the plaintiffs to the written conditions, it is such a fraud as will let in evidence of the parol condition omitted."

4. If the defendant had the title and exclusive possession of the land, at the time of the severance from the freehold, trover will not lie by the plaintiffs for the grain or straw severed.

Answered in the negative.

5. The damages, if any, due to Mrs. Henry Dillinger by reason of her interest in the grain or straw, cannot be recovered by the husband, without joining her in the action.

Answer.—"This point is answered in the negative—the husband being entitled, as tenant by the courtesy, to the profits of his wife's lands."

6. The cause of action having arisen out of an alleged contract, no recovery can be had, unless all the parties having interest in the property, are joined as plaintiffs.

Answer.—"The proper parties are made plaintiffs. The case arises not on contract, but on what was excepted out of the contract."

7. That if the jury find for the plaintiffs, or either of them, they must deduct every fourth bushel, according to the terms of the alleged reservation.

Answer.—"The defendant would have been entitled to this if he had complied with the contract; but he cannot, at the same time, repudiate and claim a benefit under the contract. The measure of damages in trover, is the value of property, at the time of the conversion, with interest."

8. That the deed of 7th April 1855, is on its face conclusive against the reservation claimed by the plaintiff; and there being no evidence of any omission by fraud or mistake, plaintiffs cannot recover.

Answer.—"I give the same answer to this point, that I have given to the third."

To these answers the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs, for $1033.96, he removed the cause to this court, and here assigned, *inter alia*, for error: 1· The admission of the evidence of the parol reservation at the sale. 2. The rejection of evidence that plaintiffs employed a puffer to enhance the price of the property. 3. The answers of the court below to the defendant's points.

*Longnecker, Reeder,* and *Green,* for the plaintiff in error.

[Backenstoss *v.* Stahler's Administrators.]

*Styles, Bridges,* and *A. E. Brown,* for the defendants in error.

The opinion of the court was delivered by

THOMPSON, J.——It is settled in this Commonwealth, that growing crops are personal property; subject, however, to pass with and as appurtenant to the realty, in case of conveyance, unless severed by reservation or exception therefrom: Bear *v.* Bitzer, 4 *Harris* 178; Wilkins *v.* Vashbinder, 7 *Watts* 379. Such was the rule of the common law, and uniformly held in England not to have been altered by the statute against frauds and perjuries. Amongst the numerous cases on this point see Sainsbury *v.* Matthews, 4 *M. & W.* 343; Evans *v.* Roberts, 5 *B. & Cr.* 829; Dunn *v.* Ferguson, *Hayes* 540 (Irish Rep).

The plaintiff in error was the purchaser of a tract of land from the defendants in error, administrators of the estate of Daniel Stahler, deceased, under an order of the Orphans' Court of Lehigh county, in proceedings in partition. At the sale, there was a reservation or exception of the grain by writing. The deed afterwards made, contained no reservation, and the vendee claims to hold it in the absence of such reservation in the deed, and by force of it, notwithstanding the exception or reservation in fact to the contrary. On the trial below, which was an action of trover to recover the value of the grain, the plaintiffs gave the written conditions in evidence, as well as offered parol evidence, to show that the grain was excepted from the sale of the land.

To the ruling of the court in regard to this matter, the 1st, 4th, 5th, and 9th exceptions apply, and will be considered together. It was offered to be proved by the plaintiffs, that at the commencement of, or during the sale, and before the property was struck down, the crier proclaimed that the grain in the ground was reserved, excepting every fourth bushel, in case the purchaser should choose to harvest it for that. This evidence was admitted under exception, and was, with the written conditions, referred to the jury, who found in favour of the plaintiffs. It was resisted on the ground that it contradicted not only the order of court but the conditions of sale. It will be remembered, that the order of court originated in proceedings in partition, and necessarily related exclusively to the realty. The grain, we have shown, was essentially personalty, subject to pass as incidental to the realty by a conveyance of the latter. If excepted or reserved, this operated as a severance, and it became thereafter, to all intents and purposes, personalty to which the order had no application. When the land was about to be sold, the grain crop rested on the contingency of whether it should be excepted from the sale by the administrators or not. If not reserved, it would pass by the conveyance as appurtenant to the realty, but if reserved or excepted, the vitality and scope of the order was in no way limited or impaired.

[Backenstoss v. Stahler's Administrators.]

It still operated to authorize the sale of what it described, viz., the realty and no more. The reservation did not change the denomination of the property in the crops, it only prevented their passage by the conveyance. In this view of the matter, it is apparent that the order was not affected or contradicted by the conditions of sale, or the oral announcement in regard to them.

Nor do we perceive the force of the objection, that the oral testimony contradicted the written conditions. At most, the announcement of the crier, which the jury have found was heard by the defendant, only declared what the written conditions defectively expressed. They either meant this, or there was such an ambiguity as might be explained by parol. In either event, the defendant would be bound. But we think the fair interpretation of the fourth clause of the condition of sale disclosed the same reservation as did the oral conditions announced by the crier, that the grain was excepted. It is as follows: " All straw from the winter grain now in the ground shall *remain* on the premises, except two ton." Here is a stipulated retrocession of the straw to the purchaser. It cannot well be doubted, but that this would be an insensible act if it had not been already reserved. That it could be reserved or excepted by a reservation or exception of the crop, will hardly be doubted either; hence, having been reserved by an exception of the grain, it became necessary, if it was an object to the purchaser to retain the straw on the farm, that it should be reserved to him out of the exception of it, and hence the stipulation that it should remain, excepting two ton. That this was so understood by the parties, is very apparent. The fourth clause of the conditions must be held to mean this, or it means nothing, which we are not at liberty to hold, if there be substance enough to disclose an intent, which we think there is. In this view of it, we think the court should have so interpreted the conditions of sale, and this would have rendered explanatory evidence unnecessary. Under these circumstances it is obvious the parol evidence did the defendant no harm, as the case was against him on this point without its aid.

But in regard to an interest, in a matter of a nature so temporary as growing crops, it is not necessary that the reservation should be by deed or in writing. It is not an interest in lands. " Growing crops of grain and vegetables, *fructus industriales*, being goods and chattels and not real estate, may be conveyed by a verbal contract, as they may be also sold on execution, as personal chattels:" 1 *Denio* 550, and cases there cited; showing this to be the rule of the common law, and not changed by the statute of frauds. A different rule exists, undoubtedly, in regard to the natural products of the earth, which grow spontaneously and without the culture of man's hands, such as trees, &c., a continuous right to enter and cut which, would require to be reserved

[Backenstoss *v.* Stahler's Administrators.]

by an instrument in writing: 2 *Pars. on Cont.* 313, note k. 314. That the reservation of grain might be made by parol is inferable from the language of SERGEANT, J. in Wilkins *v.* Vashbinder *supra*, who, after declaring that the grain in that case passed by the deed for the land, added, "there being no reservation contained in it, or *made at the time of its execution*." The nature of a reservation in such a case as this, is a collateral contract, and executory. It regards a subject that the statute does not require to be in writing, and therefore need not be. We know that a lease for a period short of three years is not void for want of a written instrument, and it would be strange if by a mere change in the form of the transaction a crop for one year could not have the same protection. The exception or reservation, in this instance, did not contradict or alter the deed in the least. And if the written conditions had been ambiguous, testimony might well have been received to explain the ambiguity. We have said that this was unnecessary, however, but if it had been otherwise, the declarations of the defendant, on the very point in controversy, going to show his admission of the terms on which he made the purchase, were surely evidence against him.

The 15th assignment of error regards the effect of the deed of the 7th of April 1855, and should properly be next considered. The court were requested by the defendant to charge, that it was " on its face, conclusive against the reservation claimed by the plaintiffs, and there being no evidence of any omission by fraud or mistake, the plaintiffs cannot recover." This was negatived by the court.

Treating the deed simply as a consummation of the sale by the administrators under the order of court, we have determined this point against the plaintiff in error for the reasons already given. The deed, however, was made, not by the administrators, but by the heirs and widow of the decedent. The defendant below claims that this was independent of the proceedings under the order of the Orphans' Court, and that the exception in the conditions of sale did not apply to it, or affect the presumption that the grain passed. It fully appears, however, that the deed was so made at the request of the defendant, as being more satisfactory to him— that there was no change in the consideration to be paid for the land from that bid for it at the sale—that the terms of payment were the same—and that the proceedings, order, report, and confirmation of sale still remain unreversed and in force. The only departure from the line of proceedings commenced, was the form in which the deed was made. This was done as a matter of convenience, and at the request of the defendant. The jurisdiction of the court was not ousted by this change, and that this was so understood, is confirmed by the fact that the proceedings in the Orphans' Court were never set aside. The deed thus made, being

but an alteration or change of the formal mode of conveyance, without any new consideration or change of terms, cannot otherwise be considered than as a substantial, although not a technical compliance with the order of court, and does not annul the conditions of sale, or render them less operative than if the deed had been made pursuant to the order of court. To give this part of the case the construction contended for by the plaintiff in error, would be to give him an unfair advantage, in an act done at his request and for his benefit. The law regards the transaction, in the manner in which it was consummated, under the evidence, as a substantial compliance with the order of court. The conditions of sale ought to have the same effect, as if the deed had been made by the administrators alone, and we think the court committed no error in their answer to the point on which this error was assigned.

The 7th assignment rests upon the rejection of evidence, offered to prove that one of the administrators employed a puffer to bid at the sale. The object of the offer was not to nullify the sale in all its extent, but only to get clear of it as an administrator's sale, and with it the effect of the conditions of that sale. It is not doubted but this might have been a good ground to have set aside the sale, if the purchaser, when he bid off the property, had been ignorant of it, and had made the objection before the confirmation; but after that, and the receipt of the deed, with the possession and occupancy of the property under it, it is too late. We need not elaborate this point.

The reservation of the grain by reason of the exception of it from the sale being established, no doubt can exist that trover will lie to redress a wrongful conversion. The right to the grain gave the administrators a right to the possession, and a right to cut and carry it away; hence, if wrongfully taken away by the owner of the fee or any one else, trover would lie to recover it: 1 *Chitty's Pl.* 152; Stultz *v.* Dickey, 5 *Binn.* 285; Myers *v.* White, 1 *Rawle* 353; Forsythe *v.* Price, 8 *Watts* 283.

The value of the grain, with interest as a mode of estimating the damage, was not error by the court: 1 *Jones* 386. This is a measure of damage often indicated, but a jury may doubtless go beyond it; but it does not appear that they did so in this case.

Nor do we think there was the least ground for complaint, that the learned judge charged in substance, that as the defendant had repudiated the possession of the crop under the contract, and claimed it all by a wrongful conversion, he was not entitled to the benefits of the contract in shielding him from the full amount of the property in damages. He could not claim in inconsistent rights.

If there had been any serious objection on the ground of nonjoinder of parties as plaintiffs, about which the facts leave the matter somewhat in doubt, the defendant should have taken advantage of

it by plea in abatement: *Arch. Civ. Pl.* 51; 1 *Chit.* 68; 1 *Harris* 497. Upon the whole, we discover no error in the numerous assignments in this case, and the judgment must be affirmed.

Judgment affirmed.

STRONG, J., dissented.