CHARLES F. WILLARD, EDGAR H. WILLARD AND
MARY L. WILLARD

*vs.*

HENRY W. HIGDON.

*Growing crops: sale or reservation of—; by parol; Statute of
Frauds, and Uniform Sales Act.   Landlord and tenant.
Parol contracts: when good defense, even
though not enforceable.*

Growing crops, if *fructus industriales,* are regarded as chattels, and can be sold without complying with the 4th section of the Statute of Frauds.                    p. 451

The principle followed by *Eichelberger* v. *McCauley,* 5 H. & J. 213, and *Rentch* v. *Long,* 27 Md. 188, to the effect that a sale of a crop not yet thrashed or gathered was not within the 17th section of the Statute of Frauds, in cases where work and labor were necessary to prepare the crop for delivery, is modified by the Uniform Sales Act of 1910, Article 83, section 97, of the Code of 1912.                    p. 451

Where a vendor, in selling his land, reserves his share of the growing crop, a tenant who delivers such share to the vendor, his former landlord, in conformity with such agreement, may plead the same in defense to a suit by the vendee for such share of the growing crops, unaffected by the rule that a tenant may not dispute his landlord's title.                    p. 450

When a vendor of land reserves to himself, by parol, his share of the growing crop, delivery and acceptance of the crop by him, and his conveyance of the property according to the agreement, take the case out of the operation of the statute.

                                        p. 452

As between the vendor and vendee of real estate, the vendor may reserve the growing crops by parol without violating the rule that the terms of a written contract can not be varied by parol.                                                    p. 453

A contract, although not enforceable under the Statute of Frauds (or the Uniform Sales Act), may yet serve as a defense to an action.                                              pp. 452-453

*Decided June 24th, 1914.*

Appeal from the Circuit Court for Frederick County. (URNER, C. J., PETER and WORTHINGTON, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Albert S. Brown* and *Charles McC. Mathias* (with whom was *Emory L. Coblenz* on the brief), for the appellant.

*Milton G. Urner* and *John S. Newman* (with whom was *Benjamin F. Reich* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee rented a farm from David H. Roelkey from April 1st, 1910, to April 1st, 1911, by an agreement in writing which contained various provisions—amongst others that Mr. Roelkey was to have one-half of all the wheat, corn, oats, clover seed, timothy seed, rye and hay raised on the farm, which the appellee agreed to deliver to any point within five miles therefrom free of cost to Mr. Roelkey. On December 27th, 1910, Mr. Roelkey agreed to sell the farm to the appellants. At that time the following note was given to him:

"Knoxville, Md., Dec. 27, 1910.

"Ninety days after date we jointly and severally promise to pay to David H. Roelkey five hundred dollars for value received as part payment of purchase of farm known as Locust Grove, containing 284 acres, more or less, except part reserved between two farms, of about two or three acres, more or less, purchase price to be $18,000.00."

That was signed by C. F. Willard, E. H. Willard and M. L. Willard. On the same day Mr. Roelkey gave the appellants a receipt as follows:

"Knoxville, Md., December 27th, 1910.

"Received of C. F. Willard, E. H. Willard and M. L. Willard five hundred dollars in form of note as forfeit on farm known as Forest Grove, price to be $18,000.

"$500.                          DAVID H. ROELKEY."

On March 25th, 1911, Roelkey and wife executed a deed to the appellants for two tracts of land described by courses and distances, which in the aggregate contained 284 acres, more or less, and it seems to be conceded that the land conveyed by the deed was the same intended to be sold as referred to in the note and receipt above. There is no such reservation in the deed, but Roelkey claims that at the time of the sale, it was agreed, distinctly but orally that he was to have the half of the wheat crop then growing, to which under the terms of the lease to the appellee he was entitled. The appellants deny that there was such an agreement and contend that there could be no binding reservation made by parol, as it would be in contradiction of the written agreement and of the deed. Roelkey claims that he positively refused to sell the farm for less than $18,000 and the reservation of the half of the wheat crop, and that when he insisted upon there being inserted in the agreement provisions that the appellee was to remain on the farm and that he reserved

the growing wheat crop, Charles F. Willard, who wrote the papers, said: "It is not worth while, it is not like strangers, we have been friends all our lives, we want only what is right." He had made a mistake in one of the papers which had to be written over again, and Roelkey claims that he again insisted upon those provisions being inserted, and said his son did not understand the omission, and Willard then turned to the son and, addressing him, said: "Dave, Mr. Higdon is to stay on there and your father reserves the growing wheat crop, is that plain enough to you?" Roelkey claims that the reservations were accordingly omitted at the instance of Willard.

The appellee delivered the half of the wheat to a mill for Roelkey, instead of delivering it to the appellants who notified him of their claim to it. The appellants sued him and at first simply had six of the usual common counts in the *narr.*, but amended by adding a seventh count, "For money due for the use and occupation of the plaintiffs' lands in Frederick County, Maryland." The plaintiff finally abandoned all of the counts in the declaration except the seventh. There are twelve bills of exception containing rulings as to the admissibility of evidence, and the thirteenth embraces the prayers,—the plaintiffs having offered seven, all of which were rejected excepting the fourth, and the defendant three, the first and second of which were rejected and the third granted. The case resulted in a judgment for the defendant, and from that this appeal was taken.

As the important question in the case is whether there could be a valid reservation of the wheat crop by parol, notwithstanding the agreement of December 27th, 1910, and the deed in evidence, we will consider that question before referring to the exceptions and prayers separately. Before doing so, however, it will be well to say that we do not understand how the question whether a tenant can deny his landlord's title is involved in this case. That was argued at some length orally and in the brief of the appellants, but there can be no difficulty about the law on that subject. If it was

validly agreed between the appellants and Roelkey that the latter was to have the one-half of the wheat crop, it could hardly be contended that the appellee could not defend against this suit by reason of the fact that he is the tenant of the appellants. If, for example, the deed had contained such a reservation, the right of the appellee to defend on the ground that he had delivered the wheat in pursuance of that reservation could not have been questioned, and therefore we say that the important question is whether there was a valid reservation of the wheat crop.

It cannot be doubted that in this State growing crops, if *fructus industriales,* such as a crop of wheat, are regarded as chattels and can be sold without complying with the requirements of section 4 of the *Statute of Frauds* (29 Charles II, Ch. 3). *Purner* v. *Piercy,* 40 Md. 212; *Wilson* v. *Fowler,* 88 Md. 601. In this State even a sale of growing trees to be presently cut and removed by the vendee is not within the operation of that section. *Smith* v. *Bryan,* 5 Md. 141; *Leonard* v. *Medford,* 85 Md. 666. If prior to the passage of the Uniform Sales Act of 1910 (Ch. 346, p. 272) there could have been any doubt about growing crops being chattels, that statute dispels it. In section 97 of Article 83, it is declared that, " 'Goods' include all chattels personal other than things in action or money. The term includes emblements, industrial growing crops, and things attached to or forming a part of the land which are agreed to be severed before sale or under the contract of sale." As that act took effect June 1st, 1910, it is applicable to this agreement, which was made December 27, 1910.

Under the decisions in *Eichelberger* v. *McCauley,* 5 H. & J. 213, and *Rentch* v. *Long,* 27 Md. 188, a sale of a crop not yet thrashed, shucked or gathered was not within the 17th section of *Statute of Frauds* (29 Charles II, Ch. 3), because work and labor being necessary to prepare it for delivery, it was not a sale of goods, wares and merchandise within the meaning of that section, but that has been changed by the Uniform Sales Act, which reads as follows:

(1) "A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action, so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

(2) "The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time, or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.

(3) "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods expressed by words or conduct his assent to becoming the owner of those specific goods."

Although sub-section (2) has changed the rule announced by our predecessors, if the alleged agreement as to the crop between the appellants and Mr. Roelkey can be said to amount to a contract to sell or a sale, then the latter is the buyer, and the further question arises as to whether he had done any of the things which are a compliance with the statute. That must be answered in the affirmative, as Roelkey did actually accept and receive the wheat and he did give something in part payment—indeed in payment in full—as he conveyed the property for which the consideration was the $18,000.00 and the reservation of the wheat crop, if his contention in that respect be correct. Moreover, section 25 says that a contract to sell or a sale, shall "not be *enforceable by action,* unless," etc. Under our decisions a party may defend although the contract cannot be enforced on account of the

statute of frauds.   *Crane* v. *Gough,* 4 Md. 333; *Webster* v.
*LeCompte,* 74 Md. 258; see also 29 *Am. & Eng. Ency. of
Law,* 818, 822.

We must therefore consider the question of the validity
of a reservation by parol, with the understanding that a
growing wheat crop may be treated as a chattel and that the
statute of frauds does not stand in the way of the defense
in this case of such a reservation.   The authorities are not
uniform on the subject, but inasmuch as the growing crop
can be treated as a chattel, and the owner of the land can
undoubtedly sell it as such, we are of the opinion that it is
more reasonable and more in accord with the spirit of the
decisions in this State to hold that such a crop can be re-
served by parol.   Of course if a third party deals with the
vendee of the real estate, without knowledge of the reserva-
tion, another question might arise, but as between the vendor
and vendee it seems to us to be more logical to hold that such
a crop can be reserved by parol, without infringing upon
the rule that the terms of a written instrument or a deed
cannot be varied by parol, although there are many decisions
to the contrary in other jurisdictions.

In 2 *Devlin on the Law of Real Property and Deeds,* sec-
tion 980C, it is said: "On the ground that parol evidence
is inadmissible to contradict or alter the terms of a written
instrument, the rule announced in many cases is that it can-
not be shown by parol that the grantor reserved the growing
crops upon the land conveyed.   But in a number of cases a
contrary rule is announced.   In the first class of cases it is
said that to admit the reservation, by parol, of growing crops
would be in direct conflict with the rule forbidding the intro-
duction of parol evidence to vary the terms of a written
instrument.   In the other class it is said that the allowance
of a parol reservation of a growing crop is not to contradict
the deed, but to show what, in some instances, would pass
with the land as a part of the realty has, by the agreement
of the parties, been transformed into personalty."   The case

of *Grabow* v. *McCracken,* 23 Okla. 612, is annotated in 23 L. R. A. (N. S.) 1218, and also in 18 *Am. & Eng. An.* *Cases,* 503, and in both of those volumes many authorities are cited in the notes. In that case it was held that a matured corp of corn and wheat standing ungathered upon a tract of land may be specifically reserved by parol in the sale of the land as a part of the contract price or consideration of the deed. The Court cited a large number of cases in which it had been permitted to prove by parol that there was a consideration in addition to the one mentioned in the deed, as that was not contrary to the general doctrine that parol evidence could not be admitted in contradiction of or to vary a written instrument or deed.

In the notes referred to, cases on both sides of the question are cited; among those holding that the vendor may avail himself of a parol exception of growing crops, and that parol evidence is admissible to show that a crop growing on the land was excepted from the operation of the deed, are *Heavilon* v. *Heavilon,* 29 Ind. 509; *Harvey* v. *Million,* 67 Ind. 90; *Benner* v. *Bragg,* 68 Ind. 338; *Hisey* v. *Troutman,* 84 Ind. 115; *Bourne* v. *Bourne,* 92 Ky. 211; *Flynt* v. *Conrad,* 61 N. C. 190; *Walton* v. *Jordan,* 65 N. C. 170; *Baker* v. *Jordan,* 3 Ohio St. 438; *Youmans* v. *Caldwell,* 4 Ohio St. 72; *Backenstoss* v. *Stahler,* 33 Pa. 251; *Harbold* v. *Kuster,* 44 Pa. 392; *Kerr* v. *Hill,* 27 W. Va. 576. Without now quoting from any of these cases, we are of the opinion that they sustain the position apparently adopted by the lower Court that in this State a reservation of a wheat crop can be validly reserved by the parol agreement of the parties, and the fact that the deed does not include the reservation does not defeat it. There can be no doubt that under our law this wheat crop could be treated by the parties as personal property and if they did agree that it should be reserved by the vendor when he executed the deed it is manifest that it was not intended to convy it.

While Roelkey was the owner of the reversion he could undoubtedly have sold his interest in the growing crop of wheat by parol, and after the appellants became such owners they could have sold the landlord's interest in the crop, if it was not reserved by Roelkey. As then it is permissible for a vendor to sell such a crop by parol before he conveys the land and as the vendee can sell it, if still his, by parol after he becomes the owner of the land, it seems to us to be illogical to hold that although before executing the deed the vendor and vendee agreed that it should be reserved to the vendor, yet because it was not reserved in the deed itself the execution and delivery of the deed operate to so reattach this chattel to the real estate as to make it realty, and not personalty, and thereby convey to the grantee what was expressly and at the time validly agreed should not go to the grantee. An interest in a growing crop is of a temporary character, and it uselessly burdens a deed in fee simple to insert such a reservation in it. If a growing crop would necessarily pass by a deed of real estate, regardless of what had been done with reference to it before the deed was made, that would be a good reason for requiring it to be reserved when the deed for the real estate is executed, but as the sale of a growing crop such as this is not the sale of an interest in land but of a chattel, and is now so declared by statute, a deed for the land does not necessarily convey the crop. If Roelkey had sold his interest in this wheat crop to the appellee, or to some other third person, and the appellants knew it, could it be pretended that they could nevertheless in an action for use and occupation recover from the appellee one-half of the value of the wheat simply because the deed did not reserve it? Certainly not, and why then can they recover it, if they agreed that it should be paid to Roelkey? If the appellee had a valid lease, of which the appellants had notice, could they eject him because there was no reservation in the deed in favor of his lease? A tenant may have property so attached to the land as to appear to be a part of the realty, but if it

was such property as a tenant has the right to remove, there cam be no doubt of his right to prove that it was his, and remove it—notwithstanding a deed had been made which made no such reservation. The case of *Baker* v. *Jordan,* 3 Ohio St. 438, is so well reasoned out and in our judgment announces such a wise and correct rule, that we will quote at some length from it. It concludes as follows: "A deed purports to convey the realty. But what is the realty? Growing corn may be part of it, for some purposes, but it is generally to be considered as personalty. If the parties to a deed either by words or their behavior signify their understanding that as between them it is personalty, the law will so regard it, and will respect their intention in the construction of the deed. When the evidence of such understanding is produced, it is not to contradict the deed, for with that it is perfectly consistent, but it is to show that what in some instances would go with the lands as part of the realty, was, in that case, converted into personalty by the will of the parties, and thus to hold the deed to its true meaning and effect."

Without deeming it necessary to determine whether under our decisions it could be shown that the reservation of the wheat crop was a part of the consideration for the deed, and therefore parol evidence was admissible on that ground, we are satisfied to base our conclusion on the ground announced in *Baker* v. *Jordan, supra,* and other cases adopting the same view. We understand the position taken by such cases in effect to be, that a conveyance of land may or may not have been intended by the parties to include growing crops, such as wheat, corn, etc., and hence that such a crop does not necessarily pass by a deed for the land, but on the contrary if before the conveyance it has been by the action or agreement of the parties converted into personalty, parol evidence is admissible to prove that fact. That is so for the obvious reason that when a deed for real estate is made, it does not convey personal property on or in the land, and if a crop

has been so dealt with by the parties before the execution and delivery of the deed as to make it personal property, the parties did not intend the crop to pass with the land. In other words the crop is not included in the sale of the land, and if it be not permitted to prove the previous dealings of the parties the deed would convey what was not sold. A growing crop of wheat is not such a character of property under our decisions, or under our statutes, as to necessarily pass with the land in which it is growing, in the absence of a reservation in the deed of conveyance.

We therefore hold that it was permissible to submit to the jury the question whether it was agreed between the appellants and Roelkey before the sale was consummated that the latter should have the growing crop of wheat, and that if they so found (as they did) this action could not be maintained against the appellee.

We will briefly refer to the exceptions. The first and second are not pressed. The third, fourth, fifth, sixth, seventh, eighth, ninth and tenth were to the admission of testimony in reference to the parol agreement about the wheat crop. From what we have said it will be seen that such testimony was admissible. The eleventh was to the action of the Court in sustaining an objection to a question asked Charles F. Willard: "What steps did you take to protect yourself against the delivery of the wheat?" We do not understand how that ruling could have injured the appellants, in view of our conclusion on the main question. There was no error in the twelfth exception. Without discussing the prayers separately, we are of opinion that the plaintiff's fourth and the defendant's third, which were granted, were sufficient to fairly present to the jury the real question involved in the case, and we will affirm the judgment.

*Judgment affirmed, the appellants to pay the costs.*