FILED

NOT FOR PUBLICATION

NOV 19 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| **BANK OF BOZEMAN; DAKOTA WESTERN BANK; BANK OF HAZELTON; BANK FORWARD, AKA Security State Bank of North Dakota; WADENA STATE BANK; MCVILLE STATE BANK**,<br><br>Plaintiffs - Appellants,<br><br>v.<br><br>**BANCINSURE, INC., an Oklahoma corporation**,<br><br>Defendant - Appellee. | No. 09-36088<br><br>D.C. No. 2:08-cv-00005-CSO<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted October 6, 2010
Seattle, Washington

Before:    **KOZINSKI**, Chief Judge, **THOMAS** and **M. SMITH**, Circuit
           Judges.

A condition precedent to coverage under BancInsure's Financial Institution

---

   [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Bond (FIB) is "[a]ctual physical possession of [original security documents] by the Insured . . . or [its] authorized representative." Appellants (Participant Banks) did not present evidence that they or an authorized representative had "actual physical possession" of the original security documents before they extended credit. Cf. BancInsure, Inc. v. Marshall Bank, N.A., 453 F.3d 1073, 1075–76 (8th Cir. 2006). The banks that sold the loan participations (Lead Banks) did not agree to act as the Participant Banks' "authorized representatives" for purposes of the FIB. To the contrary, the Loan Participation Agreements (LPAs) provide that the Lead Banks "make[] no warranty or representation of any kind or character relating to . . . the [c]ollateral," and that each Participant Bank "is relying upon its own due diligence, credit investigation and credit analysis, and not on any representations, warranties or statements of [the Lead Banks]." These provisions make clear the Lead Banks were not agents of the Participant Banks as to any obligations contained in the FIB concerning the collateral. See Resolution Trust Corp. v. Aetna Cas. & Sur. Co. of Ill., 831 F. Supp. 610, 618–19 (N.D. Ill. 1993).

Because the Participant Banks can't point to any provisions in the LPAs establishing an authorized representative relationship, see Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co., 447 N.W.2d 171, 176 (Minn. 1989), we will not look to extrinsic evidence of the parties' intent or of standard

banking practices, see McKnight v. Torres, 563 F.3d 890, 893 (9th Cir. 2009). The district court didn't err in refusing to reform the LPAs to the detriment of BancInsure, a third party, especially in the absence of any showing of mistake. See Restatement (Second) of Contracts § 155 (1981); cf. Black v. Richfield Oil Corp., 146 F.2d 801, 804 n.6 (9th Cir. 1945).

Compliance with Agreement (E)'s condition precedent isn't impossible in a participation agreement situation, as the dissent suggests. Dissent at 2–3. Each participant bank need only possess the original security documents at some point, and can return them before extending credit. And we don't preclude the possibility of a participant bank appointing the lead bank as its agent for actual physical possession of the collateral. We need not decide that question because here there is no evidence that the Participant Banks did so.

Nor did the Participant Banks meet Agreement (E)'s reliance requirement. See Republic Nat'l Bank of Miami, 894 F.2d at 1263 (to demonstrate coverage under Agreement E, the insured "must establish that it relied on" original forged document); Nat'l City Bank of Minneapolis, 447 N.W.2d at 177 ("Reliance on another bank's possession of stock certificates is not enough . . . ."). Because the Participant Banks failed to examine the original security documents before closing the loan, as the LPAs permitted them to do, they cannot show that they extended

credit "on the faith of" those documents. Plaintiffs' reliance amounts to an act of blind faith, not good faith.

Finally, it was the worthlessness of the underlying collateral that directly caused the Participant Banks' losses, as several courts construing Agreement (E) have held in similar circumstances. See Liberty Nat'l Bank v. Aetna Life & Cas. Co., 568 F. Supp. 860, 866 (D.N.J. 1983); Reliance Ins. Co. v. Capital Bancshares, Inc./Capital Bank, 685 F. Supp. 148, 151–52 (N.D. Tex. 1988); Fr. Am. Banking Corp. v. Flota Mercante Grancolombiana, S.A., 752 F. Supp. 83, 90–91 (S.D.N.Y. 1990). The Participant Banks would have sustained the same losses had the stock certificates and corporate guarantees been genuine because Transcontinental Airlines had virtually no assets or revenues. But see Jefferson Bank v. Progressive Cas. Ins. Co., 965 F.2d 1274, 1283–85 (3d Cir. 1992) (permitting jury trial on proximate cause of bank's loss where collateral was "far from completely valueless"). Therefore, the losses did not "result[] directly from" forgery. BancInsure's Agreement (E) limits coverage to losses "resulting directly from" certain events it sets out. Thus, loss causation determines whether BancInsure is liable, not just the extent of the Participant Banks' damages. Cf. KW Bancshares, Inc. v. Syndicates of Underwriters at Lloyd's, 965 F. Supp. 1047, 1054–55 (W.D. Tenn. 1997). It doesn't matter that the Participant Banks may not have extended

credit if they had realized the collateral was worthless because the FIB is not a policy of credit insurance.  See id.; Republic Nat'l Bank of Miami, 894 F.2d at 1263.

**AFFIRMED.**

*Bank of Bozeman v. BancInsure, Inc.*, No. 09-36088

THOMAS, Circuit Judge, dissenting:

I respectfully dissent.

I would join the Seventh Circuit in holding that the worthless collateral defense does not apply to an Insuring Agreement (E) under the Financial Institution Bond. *See First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 979-80 (7th Cir. 2007). The cases cited by BancInsure and the district court concern Insuring Agreement (D), which is not at issue in this case. I agree with BancInsure that a fidelity bond is not credit insurance; however, neither is the lack of creditworthiness a defense to a claim founded on forgery.

Genuine issues of material fact preclude summary judgment on the question of whether the Lead Banks were agents of the Participating Banks for retention of the original collateral. Under Minnesota law, which governs the agreement, an agency relationship may be created by implication through a course of dealing. *Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn. 1981). The Loan Participation Agreements provide that each Lead Bank was to retain physical possession of all the loan documents "in trust" for the Participating Banks. This arrangement is consistent with the "trust relationship" that sometimes characterizes the lead bank-participant bank relationship. *Fireman's Fund Ins. Cos. v. Grover (In re Woodson Co.)*, 813 F.2d 266, 270-71 (9th Cir. 1987). Consistent with the

trust relationship, the Lead Banks were the designated servicing agent for the loan, and were paid a servicing fee by the Participant Banks. The Lead Banks were to administer and manage the loan agreement, note, and collateral "in the ordinary course of business." The Participant Banks tendered expert testimony indicating that the phrase "ordinary course of business" encompassed the Lead Banks retaining physical possession of the collateral. Indeed, the agreement provided that the Participant Banks could examine any document relating to the collateral, upon reasonable notice to the Lead Banks and during normal business hours–implying that the parties anticipated the Lead Banks would retain actual physical possession.

All of these provisions were consistent with standard participant-lead bank relationships. As Judge Posner has observed, "[i]n a loan participation, the lead bank or other lead lender is the only lender; the participants have a contractual relationship only with that bank." *Grojean v. Comm'r*, 248 F.3d 572, 576 (7th Cir. 2001). Thus, on this record, there are genuine issues of material fact that preclude summary judgment on the question of whether or not the Lead Banks acted as agents for the Participant Banks in retaining physical possession of the collateral.

It would be entirely antithetical to the participant-lead bank relationship for a participating bank to possess original documents. To deny coverage to Participant

Banks solely because they did not have actual physical possession of the collateral would provide insurers a complete defense in all cases involving participation agreements because it would be impossible for all participant banks to meet that condition. If the insuring agreement is construed in this fashion, the coverage would be impermissibly illusory, with the consequence that the clause be stricken. *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 711 (Mont. 2003).

To be sure, as is typical in participation agreements, the Participant Banks agreed to proceed without representation or warranty from the Lead Banks and without recourse to the Lead Banks. However, these restrictions are not particularly relevant. The scope of agency may be limited. *Peterson v. Schober,* 256 N.W. 308, 313 (Minn. 1934). Indeed, an agent may even have adverse interests to the principal, so long as those interests are disclosed. Restatement (Second) of Agency § 24 (1958). Thus, the limitation of the Lead Banks' liability is not germane to the question of whether the Lead Banks acted as limited authorized agents for the Participant Banks in taking physical possession of the collateral at issue. The Participant Banks have tendered affidavits to the contrary, and there is nothing in the participation agreement that would preclude such an arrangement. Thus, I would hold, on this record, that genuine issues preclude summary judgment on the "actual physical possession" exclusion.

For similar reasons, I would hold, on this record, that the Participating Banks raised genuine issues of material fact as to whether they extended credit "on the faith of any original" security document which proved to be forged. As Judge Easterbrook has noted, "good faith" under Insuring Agreement (E) is measured by a subjective, not an objective inquiry, and is not equivalent to "due care." *State Bank of the Lakes v. Kan. Bankers Surety Co.*, 328 F.3d 906, 909 (7th Cir. 2003). As he put it: "Why write 'in good faith' if you mean 'in the exercise of reasonable care'?" *Id.* The affidavits tendered by the Participating Banks establish genuine issues of material fact on this question.

I agree that there are serious questions about the proximate cause of the loss. However, those are damage issues, not liability issues. I would remand for trial to allow each party to present its factual assertions and defenses to both coverage liability and damages. *See Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1285 (3d Cir. 1992) (holding that the question of proximate cause of a loss under Insuring Agreement E is a question of fact for the jury).

For these reasons, I respectfully dissent.